FILED

Jun 21 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ Josepht      DEPUTY

Trenton R. Kashima, Esq. (SBN 291405)
FINKELSTEIN & KRINSK, LLP
550 West C St., Suite 1760
San Diego, CA 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

Kevin J. Stoops (*pro hac vice* forthcoming)
kstoops@sommerspc.com
Charles R. Ash IV (*pro hac vice* forthcoming)
crash@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Counsel for Plaintiff and Proposed Class
and Collective Members*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EBONY HUDSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**LIBRE TECHNOLOGY INC.**, doing business as Student Loan Service, Docupop, and Student Loan Service, US; **ANTONY MURIGU**; **JASON BLACKBURN**; and **BRIAN BLACKBURN**.<br><br>Defendants. | Case No.: '18CV1371 GPC KSC<br><br>**FLSA COLLECTIVE ACTION/ CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>**JURY DEMAND** |

Plaintiff EBONY HUDSON (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorney, hereby brings this Collective/Class Action Complaint against Defendant LIBRE TECHNOLOGY INC., doing business as Student Loan Service, Docupop, and Student Loan Service, US (hereinafter collectively referred to as "Libre" or "Defendant"), ANTONY MURIGU, JASON BLACKBURN, and BRIAN BLACKBURN jointly and severally, and states as follows:

## INTRODUCTION

1.     This is a collective and class action brought for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA") as a FLSA § 216(b) collective action and California state-wide class action pursuant to Fed. R. Civ. P. 23(b)(3) for state law claims, including California Labor Code ("Labor Code"); the California Industrial Welfare Commission Wage Order No. 4; the California Business & Professional Code section 17200, *et seq.*; and others as pleaded below.

2.     Libre is in the debt-relief business.  Libre contacts financially distressed consumers to offer, and purports to provide, assistance in applying for U.S. Department of Education student loan consolidation and repayment programs, including Direct Consolidation Loans and Income-Based Repayment Plans.  Similar assistance is offered by the Department of Education and student loan servicers free of charge.  Unlike the Department of Education and student loan servicers, however, Libre charges for its services and leverages its communications with consumers regarding their student loan debt to sell unrelated debt relief programs.  The individual Defendants, owns and/or operates Libre and have control over Libre's employment policies.

3.     Defendants employed call center sales employees, known as Member Success Coordinators (referred to herein as "Agents").  Defendants employed these Agents, including Plaintiff, in call center facilities in San Diego, California.  Defendants employ Agents to make sales calls on prospective customer leads, and to "assist" individuals in applying for student loan consolidation and repayment programs.

4.     The individuals Plaintiff seeks to represent in this action are current and former Agents who are similarly situated to themselves in terms of their positions, job duties, pay structure, and Defendants' violations of federal and state law.

5.     Defendants required their Agents to work a full-time schedule, plus overtime. However, Defendants did not accurately record their Agents' compensable work time and overtime as required by law.

6.     Defendants failed to pay Agents for all hours worked.  For example, in the course of performing their job responsibilities, Defendants' Agents used multiple computer networks, software programs, applications, and phone systems.  The time Agents spent booting up and logging into these programs and applications before their shifts and shutting down these programs and applications after their shifts was compensable because the programs and applications were an integral, indispensable, and important part of the Agents' work and they could not perform their jobs effectively without them.

7.     Yet, Defendants do not compensate its Agents for the time they spend booting up and shutting down their computer systems.  This is because Defendants' time records system requires an Agent to be logged into their computer workstations. Accordingly, Defendants' time records system is incapable of logging the time it takes Defendants' Agents to start up and shut down their computers and related software programs, applications, and phone systems.

8.     Defendants knew or could have easily determined how long it took for their Agents to complete their unpaid work, and Defendants could have properly compensated Plaintiff and the putative Class for this work, but they did not.

9.     Defendants further failed to completely and fully compensate their employees for the overtime they did work.  While Defendants' Agents are hourly employees, these Agents also receive bonuses based on the number of consumers they funnel from Defendants' student loan services to other debt relief programs.  When Defendants calculate their Agents' "regular rate" for determining overtime, Defendants'

did not factor in their Agents bonus compensation, as required by both California and federal law.

10.     Finally, Defendants did not pay their Agents for all the commissions/bonus they earn.  This not only deprived Agents of the full amount of waged owed, but also further effected the proper "regular rate" that should have been used to determine overtime wages.  Consequently, Defendants greatly shortchanged Plaintiff and other members of the putative Class.

11.     Plaintiff seeks a declaration that their rights, and the rights of the putative Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. §216(b), which provides that suits under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because this claim arises from a common set of operative facts and is so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

14.     This Court has personal jurisdiction over Defendants because Defendants are residents of and conduct business in this State, had systematic and continuous ties with this state, and had agents and representatives in this state.  Thus, Defendants have sufficient minimum contacts with or otherwise purposefully avail themselves of the markets in the State of California, or otherwise have sufficient contacts with this District to justify them being fairly brought into court in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) because

Plaintiff and at least some of the putative Class members worked and were paid in this District and the obligations, liabilities, and breaches complained of herein arose or occurred in this District. Defendants own, operate, and/or maintain offices, transact business, employ Agents within the District, or otherwise are found within the District. Defendants are within the jurisdiction of this Court for purpose of service of process.

## PARTIES

16. Plaintiff, Ebony Hudson, is a veteran and resident of San Diego County, California. She was employed by Defendants as an Agent in San Diego, California from May 22, 2017 through the present date. Ms. Hudson's consent to join the FLSA class is attached hereto as **Exhibit A**.

17. Ms. Hudson was paid on an hourly basis, plus bonuses. Ms. Hudson also received a significant commission for each individual she transferred to Defendants' partner debt relief companies.

18. Ms. Hudson regularly worked over eight (8) hours in a workday and regularly incurred four (4) to six (6) hours of overtime in a work week. However, when Ms. Hudson received her bimonthly wage statements and paychecks, her overtime rate was calculated as 1.5 or 2.0 times her hourly rate and her regular rate.

19. Additional individuals were or are employed by Defendants as Agents during the past four years and their consent forms will also be filed in this case.

20. Defendant Libre Technology Inc. is a California Corporation with a headquarters and service of process address listed as 4719 Viewridge Avenue, Suite 200, Suite 818, San Diego, California 92123.

21. Defendant Antony Murigu, owns and operates Libre and its related entities. Mr. Murigu has control over Libre's employment policies.

22. Defendant Jason Blackburn is the Chief Operating Officer of Libre and its related entities. Jason Blackburn has control over Libre's employment policies.

23. Defendant Brian Blackburn is Director of Operations at Libre and its related entities. Brian Blackburn has control over Libre's employment policies.

## JOINT EMPLOYER ALLEGATIONS

24. Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

25. The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.,* 603 F.2d 748, 754 (9th Cir. 1979).

26. Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 (1985) (same).

27. The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).

28. Two or more employers may jointly employ someone for purposes of the FLSA. *Falk v. Brennan,* 414 U.S. 190, 195 (1973).

29. All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1981).

30. Regulations issued by the Department of Labor give the following examples of joint employment situations:

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

31.    The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate determination must be based "upon the circumstances of the whole activity." *Id.* at 1470 (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947)).

32.    During the applicable statutory period, Defendant Murigu was the Chief Executive Officer, Secretary, and Chief Financial Officer of Defendant Libre. Accordingly, Mr. Murigu operates control over Libre's daily operations, including compensation and work hours. Plausibly, by Defendant Murigu's exercise of control, input, and responsibility for issuing accurate, legitimate, and proper paychecks for the Plaintiffs and all other Agents, he meets the test for joint employer.

33.    Defendant Jason Blackburn is the Chief Operating Officer at Libre and its related entities. Accordingly, Jason Blackburn operates control over Libre's daily operations, including compensation and work hours. Plausibly, by Defendant Jason Blackburn's exercise of control, input, and responsibility for issuing accurate, legitimate, and proper paychecks for the Plaintiffs and all other Agents, he meets the test for joint employer.

34.    Defendant Brian Blackburn is Director of Operations at Libre and its related entities. Accordingly, Brian Blackburn operates control over Libre's daily operations, including compensation and work hours. Plausibly, by Defendant Brian Blackburn's exercise of control, input, and responsibility for issuing accurate, legitimate, and proper paychecks for the Plaintiffs and all other Agents, he meets the test for joint employer.

35.    The individual Defendants controlled the rate and method of wage payment for the Agents, including their commission structure. *See Conde v. Open Door Mktg., LLC*, 223 F.Supp.3d 949, 967 (N.D. Cal. 2017) (finding multiple companies and individual defendants were joint employers of sales and marketing workers). Plausibly, through the individual Defendants' exercise of control, input, and responsibility over the rate and method of wage payment and commissions for Plaintiff, they meets the test for

joint employer.

36.     The individual Defendants were also responsible for the day-to-day supervision of Defendants' Agents. Specifically, they were present in the San Diego office regular basis, directing the Agents' work, making sure the Agents were on the phones, and enforcing Defendants' employment policies and practices. Plausibly, by the individual Defendants exercise of control, input, and responsibility over the day-to-day supervision of Agents, they meets the test for joint employer.

37.     The individual Defendants created and controlled the setting and monitoring of performance goals for the Agents. Specifically, they set quotas and goals for their Agents. Plausibly, by the individual Defendants' exercise of control, input and responsibility over the setting and monitoring of performance goals of Plaintiff, they meet the test for joint employer. *Conde, supra.*

38.     The individual Defendants controlled the hiring and firing of Agents. Specifically, the individual Defendants had the authority to hire and fire Agents as they saw fit, and carried out the hiring and firing of Agents on a regular basis. Plausibly, by the individual Defendants' exercise of control, input, and responsibility over the hiring and firing of Agents, they meets the test for joint employer.

39.     Defendants maintained employment records in connection with the Agents. Furthermore, Defendants actively kept, updated, and maintained Agents' payroll records, commission reports, and performance evaluations related to their employment. Plausibly, by all Defendants' exercise of control, input and responsibility over the Agents' employment records, they meet the test for joint employer.

40.     Defendants controlled the training, structure and conditions of employment for Plaintiff. Plausibly, by Defendants' exercise of control, input, and responsibility over the training, structure and conditions of employment of the Agents, they meet the test for joint employer.

41.     Defendants provided all the necessary tools, equipment and materials used by the Agents. Specifically, they provided the computers, hardware, software, and

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

telephones necessary for the Agents to perform their work. Most importantly, this included the leads. Plausibly, by Defendants providing all necessary tools, equipment and materials used by the Agents, they meet the test for joint employer.

42.  Regardless of which of the Defendants is viewed as having had the power to hire and fire, their power over the employment relationship by virtue of their overarching control over the purse strings was substantial, and thus each Defendant meets the test for joint employer. *Bonnette, supra* at 1470.

43.  Regardless of any of the individual criteria for joint employer, as active business owners, Defendant Murigu, Defendant Jason Blackburn, and Defendant Brian Blackburn also had complete economic control over the employment relationship. The "economic reality" was that they employed Agents to perform sales and call center services for their benefit, and thus they meet the test for joint employer. *Bonnette, supra* at 1470.

44.  The fact that each Defendant may not have exercised each and every aspect of the test for employer under the law, and may have delegated some of the responsibilities to others, does not alter their status as employers; it merely makes them joint employers. *Id.*

45.  Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint. *Falk, supra;* 29 C.F.R. § 791.2(a).

46.  The above well-pleaded facts all support Plaintiff's standing to sue the Defendants named herein as a joint employers and seek damages for the alleged violations under a joint employment theory. *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 966 (N.D. Cal. 2017); *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 940 (N.D. Cal. 2016).

47.  Upon information and belief, Defendants jointly employed hundreds of Agents – including Plaintiff – in California during the last four years to perform student loan and debt relief services which include selling the above-mentioned services over the

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

phone.

48.     Plaintiff believe, and allege thereon, that Defendants are jointly and severally responsible for the circumstances alleged herein, and proximately caused the fraudulent, unlawful, unfair, deceptive acts and wage violations complained of herein.

49.     At all times herein mentioned, Defendants approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

50.     Defendants acted willfully in violating the laws and regulations pleaded in this Complaint.

51.     At all times herein mentioned, Defendants' acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## GENERAL ALLEGATIONS

52.     Defendants ostensibly operate a student loan servicing company.   Libre (which is, or has been, known as Student Loan Service, Nulo Debt Processing, NDP Services, Inc., Docupop, and Student Loan Service, US) contacts financially distressed consumers with outstanding student loans and offers these individuals the opportunity to sign up for federal student loan consolidation and repayment programs, including Direct Consolidation Loans and Income-Based Repayment Plans.  Libra charges for its services.

53.     Libre is not the only entity to offer such services, individuals can sign up for these federal programs directly through the U.S. Department of Education or through their student loan servicer.  Either of these options are free.

54.     Libre's motivation, however, is not solely assisting consumers with their student loans.  Instead, Defendants' business model relies upon generating new sales leads for related debt-relief services.  By contacting financially distressed individuals to purportedly consolidate or change their repayment plan for their student loans, Defendants are able to gauge these consumers' finances and offer other debt relief programs.

55.     For example, Defendants' Agents may help a consumer complete the necessary paperwork to change their federal student loans to an Income-Based

Repayment plan.  While doing so, the Agent will inquire regarding the consumer's other debts.    If  the  consumer's  non-student  loan  debts  are  sufficient,  the  Agent  may recommend that the consumer consider the debt relief program.  Defendants' Agents will then attempt to transfer that individual to a for-profit company that offers such debt relief services, some of which were also owned by Defendant Murigu.

56.    If the Agent was successful in generating a lead, they would receive a bonus. This compensation is in addition to the Agents' hourly wage and is not discretionary.

## Defendants Failed to Compensate Agents for All Time Worked

57.    Pursuant to Defendants' policies, training, and direction, Plaintiff and all other Agents are required to start up and log into various secure computer programs, software programs, and applications in order to access information.  The pre-shift startup and login process takes substantial time on a daily basis with said time ranging from five (5) to ten (10) minutes per day, or even longer when technical issues arise.  Similarly, at the end of the workday, Plaintiff and all other Agents are required to log out and shut down their computers, including any computer programs, software programs, and other applications necessary for their work.  This process could also take five (5) to ten (10) minutes per day.

58.    Defendants'  time  clock  system,  however,  is  located  on  Defendants' computer system, and required that Plaintiff and other Agents be logged in to their computers to punch in and out.  Accordingly, Defendants only recorded the amount of time that Agents worked once their computers had been started up.

59.    The time spend by Plaintiff and all other Agents to log into and out of their computers is considered "hours worked."  For example, the United States Department of Labor's ("DOL"), *Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA)* states:

> Hours Worked:  Covered employees must be paid for all hours worked in a workweek.  In general, "hours worked" includes all time an employee must be on duty, or on the employer's premises or at any other prescribed place of work, from the beginning of the first principal activity of the workday to the end  of  the  last  principal  activity  of  the  workday.   Also  included  is  any

10

additional time the employee is allowed (i.e., suffered or permitted) to work. *An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails.*

(Emphasis added).

60.    As a result, Plaintiff and other Agents were required to work, off the clock, when booting up and shutting down their computer systems.  This time was not *de minimis*, but represented at ten (10) to twenty (20) minutes per workday, or approximately an hour each workweek.

### Defendants Failed to Pay Bonuses Due to Agents

61.    As part of their compensation, it was Defendants' acknowledged policy and procedure to provide a monetary bonus for each lead generated for ancillary debt relief programs.  These "lead bonuses" could represent a significant portion of Plaintiff (and other Class members) paychecks.  Defendants often did not provide a bonus for each lead generated, as was Defendants' policy.  Instead, Defendants would often pay their Agents a lesser bonus amount without explanation.  Accordingly, Plaintiff and other Agents were not fully compensated for their work.

### Defendants Failed to Properly Calculate the Regular Rate of Pay

62.    Defendants also failed to fully compensate their Agents for their overtime wages.  Under FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."  29 C.F.R. §778.108.

63.    No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109.  "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such

compensation was paid." *Id*.

64.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. The burden is on Defendants to establish that any payment should be excluded. Thus, determining the regular rate starts from the premise that all payments made to Plaintiff for work performed are included in the base calculation unless specifically excluded by statute.

65.     Accordingly, an employee's regular rate of pay is computed by reference to the employees' hourly wage, as well as any bonus compensation.  29 C.F.R. §778.110(b). The Code of Federal Regulation provides an example of this rule in practice:

> If the employee receives, in addition to the earnings computed at the $12 hourly rate, a production bonus of $46 for the week, the regular hourly rate of pay is $13 an hour (46 hours at $12 yields $552; the addition of the $46 bonus makes a total of $598; this total divided by 46 hours yields a regular rate of $13). The employee is then entitled to be paid a total wage of $637 for 46 hours (46 hours at $13 plus 6 hours at $6.50, or 40 hours at $13 plus 6 hours at $19.50)..

*Id*.

66.     Because Defendants' compensation scheme failed to incorporate Plaintiff's and the Class's bonuses in their regular rate of pay, Defendants failed to properly compensate Plaintiff and their other Agents under the FLSA.

67.     Under California law, employees are entitled to "no less than one and one-half times the *regular rate* of pay" for work in excess of eight hours in one workday and the first eight hours worked on the seventh day of work in any one workweek.  Cal. Lab. Code, § 510(a) (emphasis added).  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the *regular rate* of pay for an employee. *Id*. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the *regular rate* of pay of an employee.

68.     Similar to federal law, to determine the "*regular rate*," an employer must account for all compensation, not just an employee's hourly wages.  For example, the Division of Labor Standards Enforcement Policies and Interpretations Manual, section

35.7, establishes that:

> Calculation of "Regular Rate Of Pay" Where Bonus Is Involved. When calculating the regular rate of pay for purposes of overtime calculations under the IWC Orders, non-discretionary bonuses must be calculated into the formula.

69. Again, because Defendants' compensation scheme failed to incorporate Plaintiff's and the Class's bonuses in their regular rate of pay, Defendants failed to properly compensate Plaintiff and their other Agents under California law.

**Defendant Unlawfully Benefitted From Their Agents' Uncompensated Work**

70. At all relevant times, Defendants directly benefited from the uncompensated off-the-clock work performed by their Agents.

71. At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their Agents.

72. At all relevant times, Defendants were able to track the amount of time their Agents spent working; however, Defendant failed to document, track, or pay its Agents for all the work they performed, including off-the-clock work.

73. At all relevant times, Plaintiff was a non-exempt employee, subject to the requirements of the FLSA and the California Labor Code.

74. At all relevant times, Defendants' policies and practices deprived their Agents of wages owed for the off-the-clock work activities. Because Defendants' Agents typically worked over 40 hours in a workweek, and more than eight (8) hours per day, Defendants' policies and practices also deprived them of overtime pay.

75. Defendants knew or should have known that Plaintiff and other Agents' off-the-clock work was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that it acted in good faith.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

76. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> All current and former Agents who worked for any Defendants at any time from June 21, 2015 through judgment.

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

77.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Agents.

78.     Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

79.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

80.     All of the work that Plaintiff and the FLSA Collective members performed was assigned by Defendants, and/or Defendants were aware of all of the work that Plaintiff and the FLSA Collective members performed.

81.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members.  This policy and pattern or practice includes, but is not limited to:

    a.  willfully failing to pay its employees, including Plaintiff and the FLSA Collective, for all hours worked including premium overtime wages for all hours worked in excess of 40 hours per workweek; and

    b.  willfully failing to accurately record all of the time that its employees, including Plaintiff and the FLSA Collective, worked for Defendants' benefit.

82.     Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek.

83.     Defendants failed to properly maintain timekeeping and payroll records

pertaining to the FLSA Collective under the FLSA, 29 U.S.C. § 211(c).

84.   Defendants' unlawful conduct was widespread, repeated, and consistent.

85.   A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

86.   The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated off-the-clock work owed to each employee – do not vary substantially among the proposed FLSA Collective members.

87.   There are many similarly situated current and former Agents who were underpaid in violation of the FLSA who would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join it.

88.   Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

89.   Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

90.   Plaintiff estimates the proposed FLSA Collective, including both current and former employees over the relevant period will include several hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

91.   Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of all similarly situated current and former Agents of Defendants

who are or were employed at any time in the last four years. Plaintiff proposes the following class definition:

> All current and former Agents who worked for any Defendants in California at any time from June 21, 2014 through judgment.

Plaintiff reserves the right to amend the putative class definition if necessary.

92.     Plaintiff shares the same interests as the putative class and will be entitled under the California Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

93.     The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed hundreds of Agents throughout California. The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

94.     The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class. Individual questions that Plaintiff's claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

> a. Whether Defendants engaged in a policy or practice of failing to pay each Class member regular wages for all time worked.
>
> b. Whether Defendants engaged in a policy or practice of failing to pay each Class member overtime compensation for each overtime hour worked;
>
> c. Whether Defendants engaged in a policy or practice of failing to

pay each Class member's bonuses;

d. Whether Defendants violated sections 201 to 203 of the Labor Code by willfully failing to pay all wages and compensation due each Class member who quit or who was discharged;

e. Whether Defendants violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and the corresponding hourly rate;

f. Whether Defendants violated sections 1174 and 1175 of the Labor Code and the applicable Industrial Welfare Commission Orders by failing to maintain records pertaining to when Class members began and ended each work period, the total daily hours worked, and the total hours worked per pay period;

g. Whether Defendants violated section 510 of the Labor Code and the applicable Industrial Welfare Commission Orders by failing to accurately calculate regular rates of pay for overtime purposes;

h. Whether Defendants were unjustly enriched by the work and services performed by Class members without compensation;

i. Whether Defendants engaged in unfair business practices in violation of Business and Professions Code section 17200, *et seq.*; and

j. Whether Defendants should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

95. The status of all individuals similarly situated to Plaintiff raises an identical legal question: whether Defendants' Agents are entitled to back wages, including overtime.

96. The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendants and performed their job duties without receiving wages, including overtime wages, owed for that work.

97.     The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiff and the putative Class members.

98.     The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

99.     The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

100.    Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions.   Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.***
**FAILURE TO PAY WAGES**

101.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

102.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

103.    At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

104.   Plaintiff and the FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

105.   Defendants are not "retail or service establishments" as defined by 29 U.S.C. § 213(a)(2) of the FLSA.

106.   Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

107.   At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

108.   At all times relevant to this action, Defendants required Plaintiff and the FLSA Collective members to perform off-the-clock work each shift, but failed to pay these employees the federally mandated overtime compensation for this work.

109.   The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

110.   In workweeks where Plaintiff and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's *regularly* hourly wage.  29 U.S.C. § 207.

111.   Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it took for their Agents to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

112.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, each employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 1194, 1197, 1197.1 AND IWC WAGE ORDER 4 – FAILURE TO PAY MINIMUM WAGE AND REGULAR WAGES FOR ALL HOURS WORKED**

113.  Plaintiff re-allege and incorporate all previous paragraphs herein.

114.  At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, regular wages for all hours worked.

115.  California Labor Code §§ 223, 1194, 1197, 1197.1 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K), 4(B), provide that employees must be paid no less than the applicable minimum wage for all hours worked. *See also Armenta v. Osmose, Inc*., 135 Cal. App. 4th 314, 323 (2005) (indicating that California's Labor Code requires payment for all hours worked at the employee's regular rate of pay).

116.  At all relevant times, Defendants failed and refused to pay Plaintiff and the Rule 23 California Class members minimum wage and regular wages for all hours worked including the off-clock-work alleged in this Complaint.

117.  Defendants intentionally, maliciously, fraudulently and with the intent to deprive Plaintiff and the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying Plaintiff and other Rule 23 California Class members minimum wage and regular wages for all hours worked.

118.  Plaintiff and the Rule 23 California Class were entitled to receive wages at their lawful regular rate of pay, including any shift differential where applicable, for all hours worked including the off-the-clock work alleged in this Complaint. Defendants' failure to pay such wages, as alleged above, was a willful violation of California Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order No. 4 §§ 2(K), 4(B)

119.  Wherefore, Plaintiff demands payment of the unpaid balance of the full

amount of wages due for unpaid time worked at their lawful regular rate of pay, including any shift differential where applicable, and including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2, as a result of Defendant's failure to pay for all time worked as is required under California law.

**COUNT III**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 1194, 1198**
**AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME**

120.  Plaintiff re-alleges and incorporates all previous paragraphs herein.

121.  At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

122.  At all relevant times, Plaintiff and the Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

123.  Labor Code §§ 510 and 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 4 § 3(A) provide that: (a) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (b) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

124.  At all relevant times, Plaintiff and the Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

125.  At all relevant times, Defendants failed and refused to pay Plaintiff and the Class members for any and all hours actually worked in excess of the scheduled shift.

126.  Defendants intentionally, maliciously, fraudulently and with the intent to

deprive the Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying overtime by reducing the rate of pay to Plaintiff and other Class members who worked overtime hours.

127.   Plaintiff and the Class were entitled to receive overtime compensation at their lawful regular rate of pay, including the shift differential where applicable. Defendants' failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 510, 1198, and IWC Wage Order No. 4.

128.   Wherefore, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendants' failure to pay for all time worked and such premium compensation, as is required under California law.

## COUNT III
## VIOLATION OF CALIFORNIA LABOR CODE §§ 221 AND 223
## UNLAWFUL DEDUCTIONS

129.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

130.   At all relevant times, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation, minimum wage and regular wages for all hours worked.

131.   Defendant made deductions from Plaintiffs and the Rule 23 California Class members' paychecks in the amount of the bonuses and commissions, overtime premiums, and regular wages earned by the employees during the pay period so as to avoid paying bonuses and commissions, overtime compensation, and regular wages.

132.   California Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

133.   As a result of the conduct alleged above, Defendant has unlawfully collected or received from Plaintiffs and the Rule 23 California Class part of the wages paid to

their employees.

134.   Wherefore, Plaintiffs demand the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

**COUNT IV**
**VIOLATION OF CALIFORNIA LABOR CODE § 226 and 1174**
**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**

135.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

136.   Labor Code §§ 226 and 1174 provide that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing the total hours worked, and the applicable hourly rates and corresponding total number of hours worked.

137.   At all relevant times, Defendants failed to maintain proper records and furnish Plaintiff and the Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of Labor Code §§ 226 and 1174.

138.   At all relevant times, Defendants failed to furnish Plaintiff and the Class members with accurate wage statements in writing, showing: (1) gross wages earned; (2) total hours worked by each respective employee; (3) all deductions; (4) net wages earned; (5) the inclusive dates of the period for which the employee is paid; (6) the name of the employee and only the last four digits of his or her social security number or an employee identification number; (7) the name and address of the legal entity that is the employer; and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

139. Plaintiff is informed and believes that Defendants knew or should have known that Plaintiff and the Class members were entitled to receive wage statements compliant with Labor Code § 226 and 1174, and that Defendants willfully and

intentionally failed to provide Plaintiff and the Class members with such accurate, itemized statements showing, for example, accurate hours and overtime calculations.

140. Wherefore Plaintiff demands that Defendants pay each and every Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to Labor Code § 226, as well as reasonable attorneys' fees and costs.

**COUNT V**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 201, 202, AND 203**
**WAITING TIME VIOLATIONS**

141. Plaintiff re-alleges and incorporates all previous paragraphs herein.

142. California Labor Code §§ 201 and 202 requires employers to pay their employees all wages due within the time specified by law.  California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

143. Plaintiff and the Rule 23 California Class members who ceased employment with Defendant are entitled to unpaid compensation, but to date have not received such compensation.

144. More than thirty days have passed since Plaintiffs and certain Rule 23 California Class members left Defendants' employ.

145. As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, Plaintiffs and the Rule 23 California Class members whose employment ended during the class period are entitled to thirty days' wages under California Labor Code § 203, together with interest thereon and attorneys' fees and costs.

**COUNT VI**
**VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq.***
**UNFAIR, UNLAWFUL AND/OR FRAUDULENT BUSINESS PRACTICES**

146. Plaintiff re-alleges and incorporates all previous paragraphs herein.

147. Defendants engaged and continues to engage in unfair business practices in

California by practicing, employing and utilizing the unlawful practices described above, including: (a) training and directing Agents to work off-the-clock without compensation; (b) making deductions to Agents' paychecks to recover overtime premiums earned by the employee; (c) requiring Agents to work overtime without lawful premium compensation; (d) failing to provide lawful meal breaks or premium compensation in lieu thereof; and (e) failing to provide accurate, itemized wage statements.

148. In addition, the conduct alleged in each of the previously stated causes of action constitute an unlawful and unfair business practice within the meaning of Business & Professions Code § 17200, *et seq*.

149. As a result of Defendants' conduct, Plaintiff and the Class have been harmed as described in the allegations set forth above.

150. The actions described above constitute false, unfair, fraudulent, and deceptive business practices within the meaning of California Business & Professions Code § 17200, *et seq*. By and through such unfair, unlawful and/or fraudulent business practices, Defendants obtained valuable property, money and services from Plaintiff and the Class, and have deprived Plaintiff and the Class fundamental rights and privileges guaranteed to all employees under California law.

151. Defendants were unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendants over other businesses providing similar services which routinely comply with the requirements of California law.

152. Plaintiff seeks, on her own behalf, and on behalf of the putative Class members, full restitution of all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendants by means of the acts and practices described herein.

153. Plaintiff seeks, on her own behalf, and on behalf of other Class members similarly situated, an injunction to prohibit Defendants from continuing to engage in the

unfair business practices complained of herein. Defendants' unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff and all Class members in that Defendants will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiff has no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

## COUNT VII
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

154.  Plaintiff re-alleges and incorporates all previous paragraphs herein.

155.  Defendants contracted with Plaintiff, and other members of the Class, to provide their labor, in return for a set hourly compensation and a bonus and/or commission for each debt relief services lead generated.

156.  Defendants were responsible for accurately accounting for the number of leads generated by Plaintiff and each Class Member, and paying them accordingly.

157.  Defendants failed to properly account, and pay, for each lead generated by Plaintiff and members of the Class, breaching the implied covenant of good faith and fair dealing.

158.  Accordingly, Plaintiff seeks, on her own behalf, and on behalf of other Class members similarly situated, damages in the amount of any unpaid bonuses and/or commissions improperly withheld by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on her own behalf and on the behalf of the putative Collective and Class members, request judgment as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.   Designating the named Plaintiff as Representative of the proposed FLSA collective;

c.   Ordering Defendant to disclose, in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under the FLSA;

d.   Certifying the proposed Rule 23 Class;

e.   Designating Plaintiff as representative of the proposed Rule 23 Class;

f.   Appointing Plaintiff's counsel as Class Counsel;

g.   Declaring that Defendants willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

h.   Granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate (multiplied by all off-the-clock hours that Plaintiff worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years);

i.   Granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid overtime wages calculated at the rate of two (2) of Plaintiff's regular rate (multiplied by all off-the-clock hours that Plaintiff worked in excess of twelve (12) hours per day and/or in excess of eight (8) hours in the seventh day of the workweek);

j.   Granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid commissions and bonuses owed;

k.   Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

l.   For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, and 226.7;

m.   For disgorgement and restitution to Plaintiff and other similarly effected Class members of all funds unlawfully acquired by Defendants by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200, *et seq.*;

n.   For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business and Professions Code § 17200, *et seq.*;

o.   For an injunction prohibiting Defendants from engaging in the unfair business practices complained of herein;

p.   For an injunction requiring Defendants to give notice to persons to whom restitution is owing of the means by which to file for restitution;

q.  For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and IWC Wage Order No. 7, § 7(A) related to record keeping;

r.  For an order requiring Defendants to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record keeping for Defendants' employees related to same; and for an order enjoining and restraining Defendants and their agents, servants and employees related thereto;

s.  For pre-judgment interest as allowed by California Labor Code §§ 218.6, 1194 and 2802(b) and California Civil Code § 3287 and other statutes;

t.  Awarding civil penalties pursuant to California Labor Code § 2698, *et seq.*;

u.  For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, California Labor Code §§ 218.5, 226(e) and (g), 1194, 2802 and California Code of Civil Procedure § 1021.5; and

v.  For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: June 21, 2018          /s/ Trenton R. Kashima

Trenton R. Kashima, Esq.
FINKELSTEIN & KRINSK, LLP
550 West C St., Suite 1760
San Diego, CA 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

Jason J. Thompson (*pro hac vice forthcoming*)
jthompson@sommerspc.com
Jesse L. Young (*pro hac vice forthcoming*)
jyoung@sommerspc.com
SOMMERS SCHWARTZ, P.C.

28

One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Counsel for Plaintiff and Proposed Class
and Collective Members*

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND