1

2

3

4

5

**FINKELSTEIN & KRINSK LLP**
Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
550 West C St., Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

6

7

*Attorneys for Plaintiff*
*and the Putative Class*

[Additional Counsel Listed On Signature Page]

8

9

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

| | |
|---|---|
| **EBONY HUDSON**, individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>v.<br><br>**LIBRE TECHNOLOGY INC.**, doing business as Student Loan Service, Docupop, and Student Loan Service, US; **ANTONY MURIGU**; **JASON BLACKBURN**; and **BRIAN BLACKBURN**.<br><br>                   Defendants. | Case No.: 3:18-cv-01371-GPC-KSC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT**<br><br>Date:       August 23, 2019<br>Time:       1:30 p.m.<br>Judge:     Hon. Gonzalo P. Curiel<br>Ctrm:      Courtroom 2D |

18

19

20

21

22

23

24

25

26

27

28

Case No.: 3:18-cv-01371

## **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

II.  FACTUAL AND PROCEDURAL HISTORY ..................................................2

    A.   The Parties' Claims and Defenses............................................................2

    B.   Procedural History and Settlement Negotiations.....................................3

    C.   Proposed Settlement ................................................................................4

        1.   The Settlement Class Definition ....................................................4

        2.   Settlement Benefit to the Class .....................................................4

        3.   Class Release ..................................................................................6

        4.   Class Notice ....................................................................................7

III. THE PROPOSED SETTLEMENT CLASS MEETS ALL THE REQUIREMENTS FOR CLASS CERTIFICATION.......................................8

    A.   Numerosity ...............................................................................................8

    B.   Predominance and Commonality ..............................................................9

    C.   Typicality................................................................................................10

    D.   Adequacy.................................................................................................11

    E.   Superiority ...............................................................................................11

IV.  THE COURT SHOULD PRELIMINARILY APPROVE THIS SETTLEMENT ...........................................................................................12

    A.   The Settlement Warrants Preliminary Approval Pursuant to Rule 23(e).12

        1.   The Settlement was Reached after Contentious and Informed Arms' Length Negotiations............................................................13

        2.   The Settlement Represents a Significant Value to the Class.........14

        3.   The Risk of the Litigation Favors Settlement ..............................16

        4.   Complexity, Expense, and Likely Duration of Further Litigation.18

        5.   The Experience and Views of Counsel.........................................19

        6.   The Settlement Provides the Same Relief for All Settlement Class Members.......................................................................................19

        7.   The Proposed Attorneys Fee and Cost Award is not Extraordinary ...............................................................................20

1

B.    The Settlement Also Warrants Approval under the FLSA.......................21

V.    THE PROPOSED NOTICE WILL ADEQUATELY APPRISE THE CLASS
OF THEIR RIGHTS UNDER THE SETTLEMENT ........................................23

A.    Notice is Reasonably Calculated to Reach the Settlement Class ............23

B.    The Notice Allows Settlement Class Members to Make an Informed
Decision..................................................................................................24

VI.    PROPOSED TIMELINE FOR EVENTS SHOULD BE ADOPTED ...............24

VII.    CONCLUSION ..............................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

# <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
   No. 15-CV-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017), *amended sub nom.*, 2018 WL 558844 (N.D. Cal. Jan. 25, 2018) ................................................... 9

*Aguirre v. Genesis Logistics*,
   No. SACV1200687, 2013 WL 10936035(C.D. Cal. Dec. 30, 2013) ...................... 17

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 9

*Amchem Prods. Inc. v. Windsor,* 521 U.S. 591 (1997) ............................................. 23

*Baby Neal for & by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ................................................................................... 9

*Barrentine v. Arkansas–Best Freight System, Inc.*,
   450 U.S. 728 (1981) ........................................................................................... 21

*Beck-Ellman v. Kaz USA, Inc.*,
   2013 WL 1748729, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ........................... 12

*Boyd v. Bechtel Corp.*,
   485 F.Supp. 610 (N.D. Cal. 1979) ...................................................................... 19

*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945) ........................................................................................... 22

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004) .............................................................................. 11

*Chu v. Wells Fargo Invs., LLC*,
   Nos. C 05–4526, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ............................... 20

*Collins v. Cargill Meat Solutions Corp.*,
   274 F.R.D. 294 (E.D. Cal. 2011) ........................................................................ 15

*Collins v. Sanderson Farms, Inc.*,
   568 F. Supp. 2d 714 (E.D. La. 2008) .................................................................. 22

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................ 19

*County of Suffolk v. Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 1990) ............................................................................. 18

*Crawford v. Lexington–Fayette Urban County Gov't*,
   No. 06-299, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) ..................................... 22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................... 8, 10, 11

*In re Activision Sec. Litig.,*
 723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................... 21

*In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.,*
 55 F.3d 768 (3d Cir. 1995) .................................................................. 13

*In re Heritage Bond Litig.,*
 No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005).................... 13

*In re M.L. Stern Overtime Litig.,*
 07–CV–0118, 2009 WL 995864 (S.D. Cal., Apr. 13, 2009) ................................ 13

*In re Mego Fin. Corp. Sec. Litig.,*
 213 F.3d 454 (9th Cir. 2000) (affirming award of 33.3% of $1.725 million) ........ 21

*In re Newbridge Networks Sec. Litig.,*
 No. CIV. A. 94–1678, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ........................ 15

*In re Nvidia Derivs. Litig.,*
 No. C-06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................... 17

*In re Pac. Enterprises Sec. Litig.,*
 47 F.3d 373 (9th Cir. 1995) .................................................................. 19

*In re Quantum Health Res., Inc.,*
 962 F. Supp. 1254 (C.D. Cal. 1997) ....................................................... 21

*In re Syncor ERISA Litig.,*
 516 F.3d 1095 (9th Cir. 2008) ............................................................... 13

*In re Tableware Antitrust Litig.,*
 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................... 13

*In re Toys R Us,*
 295 F.R.D. 438 (C.D. Cal. 2014) .......................................................... 18

*In re Uber FCRA Litig.,*
 No. 14-CV-05200, 2017 WL 2806698 (N.D. Cal. June 29, 2017) ........................ 16

*Knight v. Red Door Salons  Inc.,*
 No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................... 19

*Leverage v. Traeger Pellet Grills, LLC,*
 No. 16-CV-00784, 2017 WL 2797811 (N.D. Cal. June 28, 2017) ........................ 15

*McCrary v. Elations Co., LLC,*
 No. EDCV 13-00242 JGB, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014).............. 12

*McDonald v. Bass Pro Outdoor World, LLC,*
 13–cv–889, 2014 WL 3867522 (S.D. Cal. Aug. 5, 2014) ..................................... 13

*Misra v. Decision One Mortg. Co.,*
 No. SACV070994, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ......................... 16

PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................ 23

*Nat'l Rural Telecomms. Coop v. DirecTV*,
221 F.R.D. 523 (C.D. Cal. 2004) .................................. 19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ....................................12, 13

*Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*,
303 F.R.D. 337 (E.D. Cal. 2014) .................................. 10

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*,
No. 2:13–cv–00672, 2014 WL 4961109 (E.D. Cal. Oct 2, 2014)........................... 12

*Perez-Olano v. Gonzalez*,
248 F.R.D. 248 (C.D. Cal. 2008) .................................. 10

*Petruzzi's, Inc. v. Darling–Delaware Co., Inc.*,
880 F.Supp. 292 (M.D. Pa. 1995) ................................ 20

*Ramirez v. Benito Valley Farms, LLC*,
No. 16-CV-04708. 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017)....................15, 16

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ....................................... 9

*Roe v. Frito-Lay, Inc.*,
No. 14-CV-00751, 2017 WL 1315626 (N.D. Cal. Apr. 7, 2017) ........................... 20

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003); ....................................... 20

*True v. American Honda Motor Co.*,
749 F.Supp.2d 1052 (C.D. Cal. 2010).......................... 20

*Valentino v. Carter–Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ....................................... 11

*Vasquez v. Coast Valley Roofing, Inc.*,
670 F.Supp.2d 1114 (E.D. Cal. 2009)........................15, 19

*Viceral v. Mistras Grp., Inc.*,
No. 15-CV-02198, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) (approving a
California wage and hour settlement where the class received 11.6% of the
estimated total liability, or approximately $29 per work week) ........................15, 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..................................................... 9

*Zackaria v. Wal-Mart Stores, Inc.*,
No. ED CV 12–1520, 2015 WL 2412103 (C.D. Cal. May 18, 2015) ..................... 17

**State Cases**

*Brinker Rest. Corp. v. Superior Court*,
  53 Cal. 4th 1004 (2012) ...................................................................................... 17

*Rebney v. Wells Fargo Bank*,
  220 Cal. App. 3d 1117 (1990), *opinion modified* (June 18, 1990) ........................ 18

*Thurman v. Bayshore Transit Mgmt., Inc.*,
  203 Cal. App. 4th 1112 (2012) ............................................................................ 16

**Statutes**

29 U.S.C. § 206 ...................................................................................................... 22

29 U.S.C. § 207 ...................................................................................................... 22

29 U.S.C. § 216 ................................................................................................10, 22

Cal. Labor Code § 1174 ......................................................................................... 10

Cal. Labor Code § 1198 ......................................................................................... 10

Cal. Labor Code § 221 ........................................................................................... 10

Cal. Labor Code § 223 ........................................................................................... 10

Cal. Labor Code § 226 ........................................................................................... 10

Cal. Labor Code § 2699 ......................................................................................... 15

Cal. Labor Code § 510 ........................................................................................... 10

Cal. Labor Code § 558 ......................................................................................10, 16

**Rules**

Fed. R. Civ. Pro. 23 .........................................................................................passim

**Other Authorities**

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist
  (2010) .................................................................................................................. 24

*Manual for Complex Litigation* (2d ed.) ................................................................ 12

PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

## I.   __INTRODUCTION__

Plaintiff Ebony Hudson respectfully seeks preliminary approval of her Joint Stipulation of Class Settlement and Release (the "Settlement Agreement" or "Agreement")[1] with Defendants Libre Technology, Inc., Antony Murigu, Jason Blackburn, and Brian Blackburn (collectively "Defendants") and certification of the Proposed Settlement Class.

Plaintiff's claims arise from Libre's employment of call center employees, known as Member Success Coordinators ("Agents"). Plaintiff alleged that Defendants failed to pay Agents for all hours worked, the legally required minimum and overtime premium wages, as well as meal and rest period wages, resulting in unlawful wage deductions, inaccurate wage statements, and waiting time penalties under California law. Additionally, Plaintiff sought civil penalties pursuant to the Private Attorneys General Act of 2004 ("PAGA") and other provision of the California Labor Code.

The proposed Settlement was only reached after an informed and thoroughly-vetted analysis of the claims and arm's length negotiations by experienced counsel and a day long mediation with respected wage and hour mediator Steve Rottman. Under the Settlement Agreement, Defendants have agreed to pay $425,000.00 to resolve Plaintiff's claims on a class and collective basis. After deducting any Court-approved attorneys' fees and expenses, class representative incentive payments, administration costs, and payments to the Labor & Workforce Development Agency ("LWDA"), the net settlement fund shall be distributed to all qualified employees.

This Settlement provides substantial recovery for Defendants' alleged wage and hour violations. Plaintiff estimates that the Settlement, if approved, would result in a $2,361.69 check (before tax) for the average employee. This relief is immediate, not requiring an aggrieved employee to make a claim, and avoids the risk of further

---

[1] The Settlement Agreement is attached hereto as Exhibit C, to the Declaration of Trenton R. Kashima ("Kashima Decl.") concurrently filed herewith. Any defined terms used within this Motion are given the same meaning is established within the Settlement Agreement.

PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

litigation.  Accordingly, this Settlement is a fair and reasonable settlement of the parties' dispute.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   The Parties' Claims and Defenses

Plaintiff brought this action against Defendants for violations of California and federal labor laws, including the Fair Labor Standards Act ("FLSA").  *See generally,* First Amended Complaint ("FAC"), Dkt. No. 23.  Plaintiff's Complaint is multifaceted, including claims regarding Defendants' failure to pay for all hours worked, pay overtime wages, provide meal and break periods, pay wage premiums for meal and break periods, pay all final wages, and to provide accurate wage statements.  *Id.*

Libre's Agents make sales calls to prospective customers and assist individuals in applying for student loan consolidation and repayment programs.  *Id.*, at ¶¶ 54-55. Plaintiff alleges that Defendants failed to pay Agents for the time required to startup, login, and sign out of their respective computer systems before starting and ending their day.  *Id.*, at ¶¶ 59-62.  As a result, Plaintiff and other Agents were required to work, off the clock, when booting up and shutting down their computer systems.  *Id.*

Additionally, Plaintiff alleged that Defendants failed to pay the entire amount due under its commission based compensation system, failed to include bonus pay when calculating the regular rate of pay, failed to pay for all overtime hours, and failed to provide Plaintiff and the other Agents with uninterrupted, work-free 30-minute meal periods and paid 10-minute rest breaks.  *Id.*, at ¶¶ 63-84.  As a result, Plaintiff claimed that Defendants directly benefited from the uncompensated off-the-clock work performed by their Agents and owes the Class unpaid wages, as well as statutory and civil penalties.  *See generally id.*

Plaintiff brought claims on behalf of two different classes: (1) a class of individuals asserting FLSA claims, and (2) a class of individuals asserting violations of California labor law under Federal Rule of Civil Procedure 23.  *Id.*, at ¶¶ 91-115.  The reason for this distinction is that the FLSA, unlike Federal Rule of Civil Procedure 23,

only authorizes "opt-in" representative actions.  29 U.S.C. § 216(b).

Defendants deny Plaintiff's allegations in this action.  Answers, Dkt. Nos. 5-8, 24-27; Kashima Decl., ¶ 22.  Defendants also contend that Plaintiff's claims are not suited for class or collective treatment, other than in the context of this proposed settlements.  *Id.*

**B.    Procedural History and Settlement Negotiations**

Plaintiff originally filed this on June 21, 2018.  Dkt. No. 1.  Based on informal discovery provided during the parties' settlement discussions, Plaintiff's complaint was amended on April 12, 2019, to add the additional allegations regarding the failure to provide meal and rest breaks and pay overtime for hours worked in excess of 40 hours in a work week.  *Compare* Complaint [Dkt. No. 1] *with* Amended Complaint [Dkt. No. 23] at ¶¶ 72-84.  Defendants answered Plaintiff's original Complaint, as well as the Amended Complaint denying all liability, and alleged several affirmative defenses. Dkt. Nos. 5-8, 24-27.

Shortly after initiation of the lawsuit, the parties began exploring the possibility of Settlement.  Kashima Decl., ¶ 5.  Plaintiff consequently requested a sample of approximately 30 percent of the putative class members' timeclock and payroll records, as well information regarding Defendants' commission/bonus structure and other employment policies and procedures.  *Id.*, at ¶ 6.  When this information was combined with the Plaintiff's employment experiences, Class Counsel was able to intelligently examine Plaintiff's claims, develop damages models, and arrive at an informed estimate of Defendants' maximum liability exposure.  *Id.*, at ¶ 11.[2]

The parties ultimately agreed to mediate their dispute before Steven Rottman, a mediator with extensive experience with wage and hour cases.  *Id.*, at ¶ 13.  On January

---

[2] Plaintiff's Counsel also prepared a pre-discovery motion for FLSA conditional certification.  Kashima Decl., ¶¶ 6-7.  However, after meeting and conferring regarding the proposed motion, the parties stipulated to toll the limitations period for the claims of putative collective action member during the settlement discussions.  *Id.*, at ¶ 7; Joint Motion and Stipulation regarding Tolling Agreement [Dkt. No. 13].

PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

24, 2018, the parties attended an all-day mediation session and were able to reach a settlement in principle. *Id.* Over the following few months, the parties negotiated the remaining terms and agreed to retain a Settlement Administrator, Phoenix Settlement Administrators. *Id.*, at ¶ 13. The parties memorialized the Settlement Agreement, which was executed by all parties on May 23, 2019. *Id.*, Ex. B.

## C. Proposed Settlement

### 1. The Settlement Class Definition

The parties additionally stipulated to certification of the following class of individuals (the "Settlement Class") for settlement purposes only:

> "all persons who, during the Class Period, have previously been or currently are employed in California by Libre Technology, Inc. dba Student Loan Service, Docupop, and Student Loan Service, US, as an hourly-paid 'non-exempt' employee" from June 21, 2014, to the date of Preliminary Approval.

Agreement at ¶¶ 3, 4, 50. There are approximately 108 members of the Class. Kashima Decl., ¶ 9. Should the Settlement fail to gain the approval of the Court, or otherwise fails to become effective, the conditional class certification shall be *void ab initio* and the parties will return to their previous litigation positions. Agreement at ¶¶ 37, 50.

### 2. Settlement Benefit to the Class

Under the terms of the Settlement Agreement, the Settlement Class will ***receive $425,000 in benefits***. *Id.* at ¶ 19. This amount is inclusive of all payments to Settlement Class Members, the Class Counsel fees and expenses, any incentive award to Plaintiff, the settlement administration costs, and all PAGA payments to the LWDA. *Id.*

The parties additionally agreed $21,250 (five percent) of the settlement proceeds will be allocated to PAGA penalties (the "PAGA Payment"), $15,937.50 (or 75 percent) of which will be paid to the Labor Workforce and Development Agency ("LWDA") to settle claims and remedies under Labor Code, sections 2699 *et seq*. *Id.* at ¶ 15. The remaining amount ($5,312.50) shall be allocated *pro rata* to the participating Class Members. *Id.* at ¶ 15. Consequently, subject to Court approval, the sum of $15,937.50

1    shall be paid to the LWDA.

2         Costs associated with the administration of the settlement will be $5,500.00 based

3    on estimates provided by Phoenix Settlement Administrators, the proposed Settlement

4    Administrator.  Kashima Decl., ¶ 17.  Class Counsel has been previously involved in

5    similar sized settlements and found Phoenix Settlement Administrators' rate to be

6    competitive.  *Id*.

7         The Settlement Agreement also provides for a payment of $6,000 to Plaintiff as

8    an incentive award for reasonable additional compensation for her service as Named

9    Plaintiff and Class Representative (Agreement at ¶¶ 14, 54(a)) and a payment of up to

10   $127,500.00 for attorneys' fees and $15,000.00 for litigation costs (*Id.* at ¶¶ 12, 54(b)).

11   These payments, of course, are subject to the Court's approval and any amount not

12   awarded by the Court will be included in the Net Settlement Amount for Payment of

13   Settlement Shares to Class Members.

14        A participating Class Member's share of the Settlement ("Settlement Share") will

15   be calculated as follows:

16   - *First*, the estimated "Net Settlement Amount" shall be determined by
17     subtracting the estimated Class Counsel Fees and Expenses Payment,
     Class Representative Payments, the Settlement Administration Costs,
18     Prior Payments, PAGA Payment due to the LWDA, and Flat Settlement
     Shares allocated.
19

20   - *Second*, the estimated "Net Settlement Amount" shall be divided by the
     total number of workweeks for all potential Settlement Class Members to
21     calculate the "Workweek Value" (*i.e*., the amount to be allocated for each
     workweek)
22

23   - *Third*, each Settlement Class Member's Settlement Share will be
     determined by multiplying the Class Member's total number of weeks
24     worked during the Class Period by the Workweek Value.

25   *Id.* at ¶¶ 18, 20, 51.  Each participating Class Member will receive $2,631.69, on

26

27

28

1  average, under the Settlement.  Kashima Decl., ¶ 20.[3]

2      The amount due to each Settlement Class Member under the Settlement, less

3  taxes and withholdings, will be provided by check.[4]  Agreement, ¶ 47.  No claims

4  process will be required.  Nor will there be any reversion of funds back to Defendants.

5  Instead, any unclaimed settlement funds will escheat to the State, in the same manner

6  as any unclaimed wages, until it is claimed.  *Id.* at ¶ 48.

7          3.   Class Release

8      In exchange for the above described relief, the Settlement Class will release

9  Defendants Libre Technology, Inc., Antony Murigu, Brian Blackburn, and Jason

10  Blackburn, as well as related entities[5], from:

11      [F]rom any and all claims, demands, rights, liabilities, and causes of action
   that were or could have been brought against the Releasees in the Action

12      based on the facts, allegations or issues set forth in the Action (the
   "Released Claims").  Released Claims for Class Members who worked at

13      Libre Technology, Inc. in California during the Class Period shall have
   their claims released during the Class Period.  The Released Claims

14      expressly include, without limitation, all claims for unpaid wages,
   including overtime wages, off-the-clock wage claims, minimum wage

15      claims, reporting time claims, claims for failure to timely pay wages, both
   during employment and after termination of employment, claims for

16      failure to keep accurate and complete payroll records, claims for failure to
   provide accurate and complete wage statements, claims for unlawful or

17      unauthorized wage deductions, claims for missed meal periods, claims for

18      missed rest breaks, claims for failing to pay wage premiums of any type

19      (including overtime, split-shift, or missed meal or rest periods), claims for

20

21

22  [3] Any dispute regarding the of weeks worked by a Class Member will be decided by the Settlement Administrator after consultation with Class Counsel, the Class Member and Defendants' Counsel.  Agreement, ¶ 41.  Defendants' records will have a rebuttable presumption of correctness. *Id.*

23

24  [4] For purposes of the Settlement, 33% of each Settlement Share shall represent unpaid wages and the remaining 67% of each Settlement Share shall represent penalties and interest.  Agreement, ¶ 52.  The portion of the Settlement Share representing unpaid wages shall be paid to each the Participating Class Member subject to any applicable employee-side tax withholdings and deductions.  *Id.*  Defendant shall be responsible for payment of the Employer Payroll Tax attributable to the Settlement Share payments constituting wages. *Id. at ¶ 53.*

25

26

27  [5] Defendant's parents, predecessors, successors, subsidiaries, affiliates, partners, owners, assigns, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, and other service providers.  Agreement, ¶ 56.

28

> statutory damages, penalties, and/or interest, including, but not limited to, recordkeeping penalties, wage statement penalties or damages, minimum-wage penalties, missed meal-period and rest-break penalties, waiting-time penalties, penalties under PAGA; premiums or costs and attorneys' fees and expenses, and any claim arising from the claims described above under applicable federal, state, local or territorial law as well as applicable regulations and Wage Orders.

*Id.* at ¶ 56.

Additionally, each Class Member who timely cashes (or otherwise negotiates) his or her settlement check will be deemed to have opted into the Action for purposes of the FLSA and, as to those Settlement Class Members, the Released Claims will include any and all claims the Settlement Class Members may have under the FLSA arising under or related to the alleged claims during the Class Period. *Id.*, at ¶ 57. This release mirrors the issues actually litigated by the parties and does not extend beyond the Amended Complaint.

### 4.    Class Notice

Should this Settlement be preliminarily approved, the parties propose that the Notice of Class Action Settlement, attached to the Settlement Agreement as Exhibit A be provided to Class Members. *Id.* at ¶¶ 21, 38. Class Notice will be accompanied by the Class Member Information Sheet which will including the Class Member's first and last name, last known address, and the estimated amount of the Class Member's Settlement Share. Agreement, ¶¶ 22, 38, Ex. B.

The Notice will inform Class Members of the benefits offered under the Settlement, as well as their right to opt-out or object to the Settlement's terms. *Id.*, at Ex. A. Class members shall have forty-five (45) days from the initial mailing of the Class Notice Packet to opt-out or object to the Settlement's terms. *Id.* at ¶¶ 39(b)&(c).

The parties will attempt to provide every Class Member with individual notice of the terms of the Settlement. Notice of the Settlement will be sent *via* first-class regular U.S. Mail, using the last known address information provided by Defendants. *Id.* at ¶

38.  The Settlement Administrator will perform a National Change of Address search to confirm the validity of each Class Member's address before the Notices are sent.  *Id.* at ¶ 55.

Should any Notices be returned as undeliverable with a forwarding address, the Settlement Administrator shall re-mail the Notice of the forwarding address provided or if a Notice is returned without a forwarding address, the Settlement Administrator will conduct a reasonable search to locate a more current address for the Class Member and to re-mail the Notice.  *Id.* at ¶ 38(c).  Class Members who failed to receive a Class Notice Packet, or who were subject to a re-mailing shall be given an additional fourteen days to submit a Class Member Information Sheet, opt out or object to the Settlement. *Id.*

## III.  THE PROPOSED SETTLEMENT CLASS MEETS ALL THE REQUIREMENTS FOR CLASS CERTIFICATION

In order to effectuate the proposed Settlement, Plaintiff also moves for certification of the Settlement Class.  At the preliminary approval stage, the Court's threshold task is to ascertain whether the proposed settlement class is maintainable under FED. R. CIV. PRO. 23(a) and (b)(3).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  To qualify for certification of a "settlement-only class," the class must be so numerous that joinder of all members is impracticable; there must be questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV. Pro. 23(a). Additionally, common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. PRO. 23 (b)(3).

### A.  Numerosity

In this case, the proposed Settlement Class is both numerous and ascertainable. Based on Defendants' employment records, there are approximately 108 members of

the Class.  Kashima Decl. at ¶ 9.  Each Settlement Class Member can be identified by name and address.  *Id.*  Defendants' records further provide the number of shifts that each Class Member was employed by Defendants during the Class Period.  *Id.*  This allows Plaintiff to not only ascertain the identity of the Settlement Class, but also determine the amount owed to each Class Settlement Member under the Settlement.

### B.    Predominance and Commonality

The Court next must determine whether questions of law and fact common to the Class are substantially similar and predominate over questions affecting the member individually.   "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 (2011).  "All questions of fact and law need not be common to satisfy the rule."  *Hanlon,* 150 F.3d at 1019).  Rather, commonality is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (*citing Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

Similarly, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Accordingly, courts often examine "commonality under Rule 23(a) together with predominance under Rule 23(b)(3)." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc*., No. 15-CV-6314-YGR, 2017 WL 1806583, at *6 (N.D. Cal. May 5, 2017), *amended sub nom.*, 2018 WL 558844 (N.D. Cal. Jan. 25, 2018).

In this case, each Class Member had similar job duties, were subject to the same alleged failure to pay for all hours worked and overtime wages, were not provided meal and rest breaks (or the resulting pay premium), and were all aggrieved employees pursuant to PAGA.  *See generally* FAC.  The Class's alleged injury stems from Defendants' common business practice, *i.e.* Defendants' common commission/bonus payment model, common policies and procedures, and uniform time clock system

(Defendants time clock system was located on Class Member's computers, which could only be accessed after starting up and logging into the computer). *See id*.; Kashima Decl., ¶¶ 4, 23. Defendants' employees worked for a single location, and were supervised by a single set of managers. Kashima Decl., ¶ 23. Thus, the Class share common questions of law and fact, includes, *inter alia*, whether they were not compensated for preliminary and postliminary work, overtime wage premiums, provided with accurate written wage statements, timely paid earned wages, and failed to receive the required meal and rest breaks. *See generally* FAC; *see also Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc*., 303 F.R.D. 337, 345 (E.D. Cal. 2014).

### C. Typicality

Plaintiff must also establish that her claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508 (citation omitted). A plaintiff's claim is typical "if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257-58 (C.D. Cal. 2008). Claims need not be "substantially identical," but only "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

The typicality requirement is fulfilled because Plaintiff and the absent Class Members have the same injury, resulting from the violations of the same Labor Code sections: Defendants failed to pay all of the Settlement Class Members for all time worked, overtime time premiums (*e.g.*, 29 U.S.C. § 216(b), Cal. Labor Code §§ 510 and 1198), failure to pay for all time worked and all wages owed (*e.g.*, Cal. Labor Code § 558), failure to provide accurate wage statements (*e.g.*, Cal. Labor Code §§ 226 and 1174), and failure to pay for all wages due upon separation. (Cal. Labor Code §203). Plaintiff's claims sufficiently coincide with those of the other Class Members.

### D. Adequacy

The Ninth Circuit has articulated two criteria for determining adequacy of representation under Rule 23(a)(4): "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both elements are met here.

Plaintiff initiated this litigation (and accepted the associated risk with filing such a complaint), represented the class during settlement negotiations, is willing to assume the responsibilities as class representatives, has no disabling conflicts of interest, and has vigilantly protected and advanced the rights of the similarly situated Settlement Class. *See* Kashima Decl. ¶¶ 27-30. Plaintiff also chose competent and experienced counsel to pursue their claims. *Id.* ¶¶ 2-3, Exs. A, B. The Settlement Class is adequately represented.

### E. Superiority

Finally, Rule 23(b)(3) requires that class litigation is the superior method for adjudicating this dispute. Factors to be considered include: class members' interest in individually controlling litigation; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing the class action. FED. R. CIV. PRO. 23(b)(3)(A)–(D). The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

This case involves approximately 108 Settlement Class Members, who have all been injured in a relatively small amount. Kashima Decl. ¶ 9. The individual amounts of recovery at issue would otherwise be too small to warrant individual litigation. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits,

1    as only a lunatic or a fanatic sues for $30"). But, even if the individual Class Members

2    were inclined to seek relief, such repetitious litigation would not benefit the parties or

3    the Court. *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB, 2014 WL

4    1779243, at *16 (C.D. Cal. Jan. 13, 2014) ("It is more efficient to resolve the common

5    questions . . . in a [single] proceeding rather than to have individual courts separately

6    hear these cases").

7         Additionally, given the procedural posture of this case, conditional class

8    certification would not engender any insurmountable manageability concerns. *See*

9    *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d

10    615, 633 (9th Cir. 1982). The proposed Settlement necessary foregoes further litigation

11    and, thus, does not require that Plaintiff prove that the class-wide prosecution of the

12    case would be manageable at trial. *Id.* Therefore, settlement of the instant case as a

13    class action is superior to any alternative.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THIS SETTLEMENT

### A.    The Settlement Warrants Preliminary Approval Pursuant to Rule 23(e)

17         "Preliminary approval of a proposed settlement is the first step in a two-step

18    process required before a class action may be settled." *Beck-Ellman v. Kaz USA, Inc.*,

19    2013 WL 1748729, 2013 WL 1748729 at *5 (S.D. Cal. Jan. 7, 2013). First, the Court

20    reviews the settlement preliminarily to determine whether it is sufficient to warrant

21    public notice and a hearing. *Manual for Complex Litigation* (2d ed.) § 21.632. This

22    initial assessment is generally made on the basis of information already known to the

23    Court and, if necessary, may be supplemented by briefs, motions, or an informal

24    presentation from the settling parties, if requested. *Ogbuehi v. Comcast of*

25    *California/Colorado/Florida/Oregon, Inc.*, No. 2:13–cv–00672, 2014 WL 4961109 at

26    *9 (E.D. Cal. Oct 2, 2014) ("At the preliminary approval stage, the 'initial evaluation

27    can be made on the basis of information [contained in] briefs, motions, or informal

28    presentation by parties'").

Settlements of class actions are favored.  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice,* 688 F.2d at 625   ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."). Thus, in determining whether preliminary approval is warranted, the issue is whether the proposed settlement is within the range of what might in a broad sense be found to be fair, reasonable, and adequate such that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final settlement approval.  *In re M.L. Stern Overtime Litig.,* 07–CV–0118, 2009 WL 995864 at *3 (S.D. Cal., Apr. 13, 2009); FED. R. CIV. P. 23(e)(2)(A)-(D).

When the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, preliminary approval is appropriate.  *McDonald v. Bass Pro Outdoor World, LLC*, 13–cv–889, 2014 WL 3867522 at *6 (S.D. Cal. Aug. 5, 2014); *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) (same).   The proposed Settlement warrants approval under these standards.   The Settlement is not only a fair, reasonable, and adequate resolution of the claims asserted, it is an extremely favorable result for the Settlement Class Members.

### 1.   The Settlement was Reached after Contentious and Informed Arm's Length Negotiations

"A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403 at *9 (C.D. Cal. June 10, 2005).   Moreover, if the terms of the settlement are fair, courts generally assume the negotiations were proper. *See In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

In the instant case, the Settlement was negotiated after an initial disclosure of

PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

1    information which enabled Class Counsel to develop an individualized damages model,

2    which approximated the value of the Settlement Class's claims on an individual and

3    collective basis.  Kashima Decl., ¶¶ 8-11.  Additionally, the parties also engaged an

4    experienced and respected mediator in an attempt to broker a settlement.  *Id*., at ¶ 12.

5    Steven Rottman is a mediator and attorney with experience in class action litigation,

6    including wage and hour litigation.  *Id.*  Yet, even with the assistance of neutral

7    mediators, the parties' settlement negotiations extended several months and only

8    concluded after an all-day mediation.  *Id*., at ¶¶ 12-14.  The involvement of a mediator,

9    as well as the lengthy and adversarial nature of the settlement negotiations, are all

10   indicia of the "contentious" nature of the underlying negotiations.

11          2.      The Settlement Represents a Significant Value to the Class

12          The Settlement Fund provides the Class $425,000 in total relief.  Based on the

13   total number of Settlement Class Members, and the total number of shifts worked,

14   Plaintiff estimates the **average recovery will be $2,361.69** (or approximately **$48.90**

15   **per week worked**).  Kashima Decl., ¶ 20.  The expected recovery represents an average

16   of **3.64 extra hours' worth of pay** per workweek.  *Id.*  This is substantial as Plaintiff

17   alleged that the uncompensated pre and post-liminary work amount to one hour of

18   additional time per week (FAC, at ¶ 62) and estimated the Class was entitled to an

19   additional one to three hours' worth of premium pay per workweek for meal and rest

20   breaks violations.  Kashima Decl., ¶ 10.  Settlement Class Members will not have to

21   take any affirmative steps to secure their portion of the Settlement.  Instead, these funds

22   will be mailed directly to the Settlement Class Members.  Thus, this recovery is not

23   illusory or insignificant.  *See Viceral v. Mistras Grp., Inc*., No. 15-CV-02198, 2016 WL

24   5907869, at *3, 7 (N.D. Cal. Oct. 11, 2016) (approving a California wage and hour

25   settlement where the class received 11.6% of the estimated total liability, or

26   approximately $29 per work week); *Tijero v. Aaron Bros., Inc*., 301 F.R.D. 314, 319

27   (N.D. Cal. 2013) (approving a California wage and hour settlement where the class

28   received approximately a "base rate" of $1.28 per week).

The valuation of the outstanding claims, and the ultimate Settlement, was informed by the parties' early discovery.  Kashima Decl., ¶ 8-11.  Class Counsel projected that the total damages for the Settlement Class to be approximately $2,000,000 to $5,000,000, if Plaintiff was completely successful on all her claims at trial.  *Id*., at ¶ 11.  Accordingly, the Settlement Fund represents approximately **between 8.5% and 21.25%** of the full verdict value of the claims being released.  *Id*., at ¶ 20. This is well within the bounds of reasonableness.  *See, e.g., Leverage v. Traeger Pellet Grills, LLC*, No. 16-CV-00784, 2017 WL 2797811, at *7 (N.D. Cal. June 28, 2017) (Approving a California wage and hour settlement where the class received 18% of the estimated total liability); *In re Newbridge Networks Sec. Litig.,* No. CIV. A. 94–1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("Courts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; but an agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness.").[6]

The Settlement also provides recovery to the State of California in the form of stipulated PAGA civil penalties.  There are no articulated standards for determining whether PAGA civil penalties provided within a class action settlement are reasonable. *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708. 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017).  Instead, the Court "evaluates the PAGA settlement in light of the PAGA requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory.'" *Id.* (citing CAL. LABOR CODE § 2699(e)(2)).

---

[6] In exchange for this relief, the Settlement Class agrees to release claims that could have, or should have, been pled in the First Amended Complaint.  The scope of the release is also reasonable.  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (finding a class action settlement fair because the "settlement does not release unrelated claims that class members may have against defendants."); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011). (finding release proper and not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement  does not release unrelated claims that class members may have against defendants.")

PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

1    It is important to note that under PAGA, both underpaid wages and civil penalties

2    are recoverable. CAL. LABOR CODE § 558(a). "Underpaid wages go[ ] entirely to the

3    affected employee or employees as an express exception to the general rule that civil

4    penalties recovered in a PAGA action are distributed 75 percent to the Labor and

5    Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees."

6    *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1145 (2012). But it

7    is not necessary for a settlement to allocate any funds toward PAGA civil penalties if

8    the settlement benefits the aggrieved employees. *See Ramirez, supra,* 2017 WL

9    3670794, at *4 ("[C]lassifying the PAGA penalties in this case solely as underpaid

10   wages is reasonable.").

11   The Settlement Agreement, nonetheless, provides $21,250 to be allocated as civil

12   penalties; divided among the aggrieved employees and the State. Agreement, at ¶¶ 15,

13   54. This amount is similar to allocations that have been approved in other settlements.

14   *See, e.g., Viceral*, *supra,* 2016 WL 5907869, at *8 (approving an allocation of $20,000

15   of a $6,000,000 settlement to the PAGA civil penalties); *In re Uber FCRA Litig*., No.

16   14-CV-05200, 2017 WL 2806698, at *2 (N.D. Cal. June 29, 2017) (approving an

17   allocation of $7,500 of a $7,500,000 settlement to the PAGA civil penalties). Here, the

18   benefit provided by the proposed Settlement is substantial and easily falls within the

19   range of reasonableness.

20                    3.    The Risk of the Litigation Favors Settlement

21   "It can be difficult to ascertain with precision the likelihood of success at trial.

22   The Court cannot and need not determine the merits of the contested facts and legal

23   issues at this stage, [Citation], and to the extent courts assess this factor, it is to

24   'determine whether the decision to settle is a good value for a relatively weak case or a

25   sell-out of an extraordinary strong case.'" *Misra v. Decision One Mortg. Co.*, No.

26   SACV070994, 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009).

27   Plaintiff is confident about the strength of her claims. Nonetheless, Plaintiff

28   recognizes that Defendants have factual and legal defenses that, if successful, would

1  potentially defeat or substantially impair the value of Plaintiff's lawsuit.  For example,

2  Plaintiff could potentially be unable to certify a class or prove the merits of their claims

3  (on a classwide basis) at trial.  These risks are not remote in an employment case.  *See,*

4  *e.g., Zackaria v. Wal-Mart Stores, Inc.*, No. ED CV 12–1520, 2015 WL 2412103, at

5  *16 (C.D. Cal. May 18, 2015) (denying certification of claims that asset protection

6  coordinators were misclassified as exempt; although putative class members received

7  similar training and were held to identical job expectations, an analysis of how

8  employees actually spent their time is an individual question not amenable to resolution

9  through collective proof).

10      Indeed, in this case, Defendants have variously denied Plaintiff's claims.  Before

11  the mediation, Defendants provided Plaintiff with video evidence that the preliminary

12  and postliminary of the clock work time maybe significantly less than what was

13  estimated in Plaintiff's complaint and damages model.    Kashima Decl., ¶ 22.

14  Defendants also assert that they provided time for employees to timely take their meal

15  and rest breaks, and that was all that is required.  *Id.*; *Brinker Rest. Corp. v. Superior*

16  *Court*, 53 Cal. 4th 1004, 1038-40 (2012) ("[A]n employer must relieve the employee of

17  all duty for the designated period, but need not ensure that the employee does no

18  work.").    Furthermore, Plaintiff recognizes that statutory penalties under PAGA—

19  which make up a large portion of the liability in this case—are discretionary, and rarely

20  is the full amount awarded at trial.  *Aguirre v. Genesis Logistics*, No. SACV1200687,

21  2013 WL 10936035, at *2 (C.D. Cal. Dec. 30, 2013) ("The Court has discretion whether

22  to impose the PAGA penalty, and if so in what amount.")  If these positions are true, it

23  would greatly reduce the amount of damages due to the Class.

24      "The Settlement eliminates these and other risks of continued litigation,

25  including the very real risk of no recovery after several years of litigation." *In re Nvidia*

26  *Derivs. Litig.* No., C-06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).

27  Indeed, appeals aside, litigating a complex case through trial is inherently perilous

28  regardless of the strengths of merits of the claims:

> [N]othing is assured when litigating against commercial giants with vast litigative resources, particular in such complex litigation as this, which would strain the cognitive capacities of any jury. Defense judgments were hardly beyond the realm of possibility. Accordingly, this factor weighs in favor of preliminary approval.

*Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1140 (1990), *opinion modified* (June 18, 1990); *See* Kashima Decl., ¶¶ 21-23.

Finally, even if Plaintiff were successful at trial, business realities created uncertainty in Plaintiff's ability to recover her hard-fought judgment. Potential exposure for the Settlement Class's claims could fall in the range of $2,000,000 to $5,000,000. *Id*. at ¶ 25. Thus, Plaintiff is justifiably concerned that Defendants would not be able to absorb a large judgment in this case. *Id.*; *In re Toys R Us*, 295 F.R.D. 438, 452 (C.D. Cal. 2014) ("For its part, Toys risked the possibility of 'catastrophic damages' … The fact that both sides faced this type of all-or-nothing prospect weighs in favor of approval."); *County of Suffolk v. Long Island Lighting Co*., 907 F.2d 1295, 1323–1324 (2d Cir. 1990) (The Court should consider the ability of the defendant to withstand a greater judgment when approving a class settlement.). Were Plaintiff's case to move forward, the ultimate recovery from Defendants could have been considerably less than the value achieved by this Settlement.

4.   <u>Complexity, Expense, and Likely Duration of Further Litigation</u>

Continuing to litigate this action would require continued and extensive resources coupled with significant Court time to proceed through trial and post-trial motions; which can often take years. Kashima Decl., ¶¶ 23-24. Furthermore, wage and hour litigation are complex and expensive, as it often necessitates extensive expert testimony, particularly with regards to damages. *Id.* But even if Plaintiff were successful at trial, Plaintiff is acutely aware that a judgment does not end the litigation. Instead, any judgment can be appealed, which will likely take two years to resolve. *Id.,* at ¶ 24.

Absent this Settlement, Plaintiff fully expects that Defendants aggressively litigate this case to trial and would appeal any favorable judgment. *Id.* "Avoiding such

a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Thus, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* at 526.

### 5.   The Experience and Views of Counsel

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons Inc.*, No. 08-01520, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (*citing Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979)); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the Court should not without good cause substitute its judgment for [counsel's]." *Boyd*, 485 F. Supp. at 622.

Nothing suggests that Class Counsel's recommendation of Settlement is unreasonable. Plaintiff and the Settlement Class were represented by law firms having extensive class action experience, including wage and hour litigation. Kashima Decl., ¶¶ 2-3, Exs. A, B, Ex. A; *Knight*, 2009 WL 248367, at *4 ("In addition to being familiar with the present dispute, Plaintiffs' counsel has considerable expertise in employment, consumer and class action litigation."). Based on that experience, and information gleaned from early discovery, Counsel was able to negotiate a sizable recovery for the Settlement Class.

### 6.   The Settlement Provides the Same Relief for All Settlement Class Members

Furthermore, the Settlement does not improperly discriminate between any segments of the Settlement Class. *Vasquez,* 670 F. Supp. 2d at 1125. Settlement Class

Members are entitled to the same relief calculated from the same formula.  Agreement, ¶ 51.  The only variation between the Settlement Class Members' recovery is a function of the number of weeks worked during the Class Period.  *Id.*  Given that both the civil penalties and damages accrued by Settlement Class Member would be logically proportional to the amount of time worked, the payment formula forwarded in the Settlement Agreement is rationally related to the claims asserted.  *See True v. American Honda Motor Co.*, 749 F.Supp.2d 1052, 1067 (C.D. Cal. 2010) ("[D]ifferential treatment of class members may be appropriate where 'the settlement terms are rationally based on legitimate considerations.'"); *Petruzzi's, Inc. v. Darling–Delaware Co., Inc.*, 880 F.Supp. 292, 300–01 (M.D. Pa. 1995) ("disparate treatment of class members may be justified by a demonstration that the favored class members have different claims or greater damages").  There is no preferential treatment between the Class.

Additionally, while the Settlement Agreement allows Plaintiff to seek an incentive award of up to $6,000, this payment is a sensible amount given the amount of time expended in prosecuting this case.  *See Roe v. Frito-Lay, Inc.*, No. 14-CV-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively reasonable' in the Ninth Circuit.") (collecting cases); *Chu v. Wells Fargo Invs., LLC*, No. C 05–4526, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs) (collecting cases).  Indeed, Class Counsel would have been able to properly value the Settlement Class's claims with the input of the Named Plaintiff.  Kashima Decl., ¶¶ 11, 30.

### 7.  The Proposed Attorneys Fee and Cost Award is not Extraordinary

In discharging its duty to determine the fairness of attorneys' fees awarded in a class action settlement, the Court's primary concern is to ensure that the process of negotiation leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *see also* FED. R. CIV. P.

23(e)(2)(C)(iii). The amount of attorneys' fees that Class Counsel intends to request is approximately 30 percent of the benefits to be received by the Settlement Class, demonstrating that the fee and cost award to be requested will not be extraordinary. *See, e.g., In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding 32.8% of $3.5 million common fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of 33.3% of $1.725 million). In fact, attorneys representing a class "routinely recover attorneys' fees in the range of 20 to 40 percent of the common fund." *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1258 (C.D. Cal. 1997). At the time of the Final Approval Hearing, Class Counsel will request that the Court award fees based upon the value of the benefits achieved in the proposed Settlement and will present their time and expense declarations to allow for a cross-check under the lodestar/multiplier method.

Additionally, the Settlement is not conditioned on the Court's approval of either Class Counsel's fee request or Plaintiffs' incentive award. Any payment of any attorney's fees or incentive awards will only occur upon the payment of funds to the Settlement Administrator for distribution to the Class. Here, any payment to Class Counsel is aligned with that of the Class.

Here, the Settlement was a product of extensive and arm's length negotiations, and involved counsel experienced in class litigation. It provides the Settlement Class real and immediate relief. The Settlement does not suffer any obvious deficiencies. It is for these reasons that Plaintiff requests that the Settlement be preliminarily approved.

### B.   The Settlement Also Warrants Approval under the FLSA

In addition to the standards set forth in Rule 23(e), the FLSA contains a separate standard for examining settlements. The FLSA was enacted for the purpose of protecting all covered workers from the inequities in the workplace that result from the differences in bargaining power between employers and employees. *See Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). The goal of the FLSA was to ensure that each employee covered by the Act received "[a] fair day's pay for a

1    fair day's work and would be protected from the evil of overwork as well as underpay."

2    *Id.* at 739 (internal citation and quotations omitted).  The FLSA, therefore, provides that

3    "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be

4    liable to the employee … affected in the amount of their unpaid minimum wages, or

5    their unpaid overtime compensation, as the case may be...."  29 U.S.C. § 216(b).  The

6    FLSA's provisions are mandatory and, except in two narrow circumstances, are

7    generally not subject to bargaining, waiver, or modification by contract or settlement.

8    *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). The two circumstances in which

9    the FLSA may be compromised are claims that are supervised by the Secretary of Labor

10   and when a court reviews and approves a settlement in a private action for back wages

11   under 29 U.S.C. § 216(b).  *Lynn's Food Stores, Inc.,* 679 F.2d at 1353.

12       The latter exception applies to this case. The Court's role in this situation is

13   comparable to that of a court in a settlement of a class action brought pursuant to Rule

14   23(e).  *Collins v. Sanderson Farms, Inc*., 568 F. Supp. 2d 714, 719 (E.D. La. 2008)

15   (comparing FLSA settlements to Rule 23(e) settlements).  "In essence, the Court must

16   ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around

17   the clear FLSA requirements of compensation for all hours worked, minimum wages,

18   maximum hours, and overtime."  *Id.,* at 719. *citing* 29 U.S.C. §§ 206, 207.  The

19   existence of a question as to the plaintiffs' entitlement to compensation under the FLSA

20   serves as a guarantee that the parties have not manipulated the settlement process to

21   permit the employer to avoid its obligations under the FLSA.  Thus, to ensure that the

22   plaintiffs have not abandoned their rights under the Act, "the court must determine

23   whether such a question, or *bona fide* dispute, exists."  *Crawford v. Lexington–Fayette*

24   *Urban County Gov't*, No. 06-299, 2008 WL 4724499 at *3 (E.D. Ky. Oct. 23, 2008).

25       The Settlement Agreement in this case resolves a "*bona fide* dispute" under the

26   FLSA and contains terms that seek to avoid further actions under the FLSA and other

27   state wage and hour laws.  Both sides aggressively advocated their positions, which

28   clearly demonstrated that the legal and factual issues presented in this action did not

1   necessarily favor either side. This *bona fide* dispute justifies settlement in this matter.

2   Moreover, for all the foregoing reasons discussed in the context of Rule 23(e) standards,

3   the settlement is a fair and reasonable compromise and should be approved under the

4   appropriate FLSA standards.

**V.   THE PROPOSED NOTICE WILL ADEQUATELY APPRISE THE CLASS OF THEIR RIGHTS UNDER THE SETTLEMENT**

### A.   Notice is Reasonably Calculated to Reach the Settlement Class

Preliminary approval permits notice to be given to class members of a hearing on final settlement approval, at which hearing class members may be heard regarding whether the Court should enter an order finally approving the settlement and their right to opt-out or object.  Rule 23(c)(2)(B) provides that for Rule 23(b)(3) classes, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *See also Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

Collectively, the notice regime is predicted to directly reach a vast majority (if not all) of the Settlement Class.  The Notice Packets will be provided to Settlement Class Members directly, *via* First Class U.S. Mail.  *Id.* at ¶ 38.  Defendants shall provide Settlement Class Members' addresses, drawn from its own employment records, to the Settlement Administrator who will then try to confirm the validity of the addresses.  *Id.* If the Notice is returned to the Settlement Administrator as non-delivered, the Notice Packets will be resent to any forwarding address provided; otherwise, the Settlement Administrator will attempt to determine a correct address by use of skip-tracing or other methods search.  *Id.*

This process will ensure that the Class receives notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *Tijero*, 301 F.R.D. 314, 325 (approving notice in a wage and hour class settlement *via* First Class U.S. Mail).

PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

Similarly, it will also ensure that the individual settlement payments will be provided to the correct address.

**B.    The Notice Allows Settlement Class Members to Make an Informed Decision**

Additionally, Class notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." FED. R. CIV. PRO. § 23(c)(2)(B).  The proposed notice meets all of these requirements.

The Notice is neutral, written in an easy-to-understand and clear language, and provides employees with (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can exercise their right to object to the settlement or opt-out of the settlement; (4) an explanation that any claims against Defendant that could have been litigated in this action will be released; (5) a schedule of the names of counsel for the Class and information concerning attorney's fees and incentive awards; and (6) the date and time of the fairness hearing, along with an explanation of eligibility to appear.  Agreement, at Ex. A.  The Notices are also eye-catching, and are similar to the exemplar notices set forth in the Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist (2010).

**VI.    PROPOSED TIMELINE FOR EVENTS SHOULD BE ADOPTED**

If the Court preliminarily approves the Settlement Agreement, it envisions the following schedule:

| Event | Date |
| --- | --- |
| Defendants to provide Class Member list to Settlement Administrator | Within ten days after the Motion for Preliminary Approval is granted |
| Settlement Administrator to mail Notice | Within seven days (or as soon as |

| Packets | reasonably practical) after receiving the Class Members' Data |
|---|---|
| Class Counsel to file Motion for Attorney's fees, costs, and incentive awards | Fifteen court days before the deadline to file objections to Settlement. |
| Deadline for Class Members to opt-out and/or object to the Settlement Agreement | Forty-five days from the initial mailing of the Class Notice Packet by the Settlement Administrator.<br><br>An additional fourteen days for Class Members who failed to receive a Class Notice Packet, or who were subject to a re-mailing of the Class Notice Packet. |
| Parties to file Motion for Final Settlement Approval | Ten court days before the Final Approval Hearing |
| Settlement Administrator to file a declaration of due diligence | Ten court days prior to the Final Approval Hearing |
| Parties' response to any Class Member's objection | Five court days prior to the Final Approval Hearing |
| Final Approval Hearing | TBA |

The parties respectfully request that the Court adopt the above settlement schedule and provide the parties a hearing date for Final Approval.

## VII.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court certify the Settlement Class, appoint Plaintiff as Class Representatives and the undersigned counsel as Class Counsel, and preliminarily approve the Settlement.


DATED: May --, 2019                     Respectfully submitted,

FINKELSTEIN & KRINSK LLP

By:  /s/ Trenton R. Kashima

Jeffrey R. Krinsk, Esq.
Trenton R. Kashima, Esq.
550 West C St., Suite 1760
San Diego, CA 92101-3593
Telephone:  (619) 238-1333
Facsimile:  (619) 238-5425

Kevin Scoops (pro hac vice pending)

25                     Case No.: 3:18-cv-01371

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Attorneys for Plaintiffs
and the Putative Classes*