UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EBONY HUDSON, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

LIBRE TECHNOLOGY INC., doing business as Student Loan Service, Docupop, and Student Loan Service, US; ANTONY MURIGU; JASON BLACKBURN; and BRIAN BLACKBURN,

Defendants.

Case No.: 3:18-cv-1371-GPC-KSC

**ORDER GRANTING IN PART AND DENYING IN PART PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**

**[ECF No. 28.]**

Before the Court is Plaintiff Ebony Hudson's unopposed Motion for Preliminary Approval of Class/Collective Action Settlement in a wage and hour dispute. (ECF No. 28.) The Settlement provides for a gross settlement amount of $425,000.00, to be distributed as follows: up to $127,500.00 in attorneys' fees, $15,000.00 for litigation costs, $6,000.00 to Plaintiff as an incentive award, $5,500.00 to the proposed claims administrator, $21,250.00 in Private Attorney General Act ("PAGA") penalties, and the rest to be allocated on a *pro rata* basis to the participating Class Members based on the hours worked during the class period. Plaintiff predicts that the Settlement would result

in a $2,361 check (before tax) for the average employee.  (ECF No. 28-1, at 8; ECF No. 36, Kahima Decl. ¶ 21.)   Prior to the hearing, the Court issued a tentative order denying in part and granting in part preliminary approval of proposed class settlement for litigant use only outlining potential areas of deficiencies in the proposed settlement.  A hearing was held on August 23, 2019.  (ECF No. 35.)  Trenton Kashima, Esq. appeared on behalf of Plaintiff and Matthew Sgnilek, Esq. appeared on behalf of Defendants.  (Id.)  After a review of the briefs, supporting documentation, the applicable law, and hearing oral argument,  the Court **GRANTS** in part and **DENIES** in part the Motion for Preliminary Approval of Class/Collective Action Settlement.

I.    **BACKGROUND**

   **A. Plaintiff's Claims**

   On June 21, 2018, Plaintiff Ebony Hudson brought this putative Rule 23 class action/FLSA collective action against Defendants Libre Technology, Inc., Anthony Murigu (its owner), Jason Blackburn (its Chief Operating Officer), and Brian Blackburn (Director of Operations) for violations of California laws and the Fair Labor Standards Act ("FLSA").  (ECF No. 1.)

   On April 12, 2019, the Court granted a joint request to allow Plaintiff to file a first amended complaint ("FAC").  (ECF No. 23.) According to the FAC, Plaintiff was employed by Defendants as a "Member Success Coordinator," or "Agent," responsible for making calls to prospective customers and assisting individuals in applying for student loan consolidations and repayment programs.  Plaintiff alleges that Defendants failed to pay coordinators for the time required to startup, login, and sign out of their computer systems before starting and ending their day.  As a result, Plaintiff and other coordinators were required to work off the clock when booting up and shutting down their computer systems.  In addition, Plaintiff alleges that Defendants failed to pay its coordinators the entire amount due under its commission-based compensation system, failed to include bonus pay when calculating the regular rate of pay, failed to pay for all overtime hours, and failed to provide Plaintiff and other coordinators with uninterrupted,

work-free 30-minute meal periods and paid 10-minute rest breaks.

On the basis of these allegations, Plaintiff's FAC raises the following claims: (1) agents were not paid for all wages and overtime due during their employment pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.; (2) agents were not paid minimum wage and regular wages for all hours worked pursuant to California Labor Codes §§ 223, 1194, 1197, 1197.1 and IWC Wage Order 4; (3) agents were not paid overtime pursuant to California Labor Codes §§ 510, 1194, 1198 and IWC Wage Order 4; (4) agents were subject to unlawful deductions in violation of California Labor Codes §§ 221 and 223; (5) agents were not provided rest and meal periods pursuant to California Labor Codes §§ 226.7 and 512; (6) agents were not timely paid wages owed in accordance with California Labor Codes §§ 202, 203, and 203; (7) Defendants failed to provide accurate wage statements in accordance with California Labor Code § 226; (8) Defendants engaged in unfair competition in violation of California's Unfair Competition Law, Business and Professions Code section 17200 *et seq*.; (9) Defendants breached the covenant of good faith and fair dealing; and (10) that by engaging in these alleged practices, Plaintiff and all others similarly situated were entitled to recover penalties pursuant to the Private Attorney General Act ("PAGA") pursuant to California Labor Code § 2698.

### 2. Negotiations, Early Disclosure, and Mediation

Plaintiff is represented by Trenton Kashima, of Finkelstein & Krinsk LLP, and Kevin J. Stroop, of Sommers Schwartz, PC (hereinafter "Class Counsel").

Shortly after the filing of the original complaint, Class Counsel began exploring the possibility of settlement with the Defendants, each of whom filed answers denying allegations of wrongdoing. As a result of these settlement talks, the parties engaged in early informal disclosure of information, during which time Defendants indicated that there were 108 putative class members. Defendants provided Class Counsel with payroll information and timeclock entries for a sample of 30% of the putative class, or 34 employees.

Based on this sample, Plaintiff observed that all Class Members worked overtime,

that is, more than 8 hours in a day or 40 hours in a week, and estimates one and three meal and rest break violations per Class Member per week. (ECF No. 28-2, at 5 (Decl. of Trenton R. Kashima, dated June 5, 2019).) Class Counsel used Defendants' sample data to develop several class-wide damages models, estimating that a favorable judgment would realistically range from two to five million dollars, including statutory penalties and treble damages if Plaintiff's class action was successful at trial. (*Id.*)

On January 24, 2018, the parties attended a full-day mediation session with Steven Rottman, a mediator who Plaintiff alleges has extensive experience with wage and hour cases. At the conclusion of the mediation, the parties signed a memorandum of understanding detailing the material terms of the Settlement. (*Id.* at 6.) Thereafter, the parties jointly moved to allow Plaintiff to amend her complaint to add additional claims as to lunch break violations uncovered during the course of the parties' settlement discussions. (*Id.*) This filing resulted in the FAC, i.e., the operative complaint. (ECF No. 23.)

### 3. Proposed Settlement

On June 6, 2019, Plaintiff filed the instant unopposed Motion for Preliminary Approval of a Class Action Settlement and Certification of Settlement Class. (ECF No. 28.) She seeks, *inter alia*, Rule 23 preliminary class certification for a Settlement Class comprised of:

> all persons who, during the Class Period, have previously been or currently are employed in California by Libre Technology, Inc. dba Student Loan Service, Docupop, and Student Loan Service, US, as an hourly-paid 'non-exempt' employee from June 21, 2014,[1] to the date of Preliminary Approval.

(ECF No. 28-1, at 11.) She also seeks preliminary approval for the terms of a settlement agreement reached with Defendants and executed on May 23, 2019 (hereinafter

---

[1] Plaintiff is inconsistent about the operative time period. Plaintiff's FAC states claims arising from June 21, 2015, but her motion, and the Settlement Agreement itself, are premised on a June 21, 2014 start date.

"Settlement").[2]

Pursuant to the Settlement, Defendants agree to pay $425,000.00, i.e., the "Gross Settlement Amount" in exchange for the release and waiver of all the claims asserted in the FAC, as well as any claims that could have, or should have, been pleaded therein. Plaintiff proposes the following allocation of the Gross Settlement Amount: $127,500.00 as attorneys' fees, $15,000.00 for litigation costs, $6,000.00 to Plaintiff as an incentive award, $5,500.00 to the proposed claims administrator (Phoenix Settlement Administrators), $21,250.00 in PAGA penalties (with 75%, or $15,937.50, to be paid to the California Labor Workforce and Development Agency ("LWDA"), and the remaining 25%, or $5,312.50, to be returned to the settlement fund), and the rest to be allocated on a *pro rata* basis to the participating Class Members.

After subtracting from the Gross Settlement Amount the amounts enumerated above, Class Members stand to share a recovery of $255,062.50, or, the "Net Settlement Amount." (ECF No. 28-2, at 7.) To calculate a Class Member's *pro-rata* share, the Net Settlement Amount will be divided by the total number of work weeks for all Settlement Class Members, resulting in the "Workweek Value." The Settlement Class Member's payment will be determined by multiplying the Workweek Value by the number of weeks worked by the Class Member during the Class Period. (ECF No. 28-2, at 7.) Plaintiff predicts that the Settlement would result in a $2,361 check (before tax) for the average employee. (*Id.* at 8.) It was estimated that potential liability, if successfully litigated, could fall in the range of $2 to $5 million. (*Id.* at 10.)

According to the Settlement, the parties will cause the Settlement Administrator to issue checks to all participating Class Members after the close of the agreed-upon opt-out period. (ECF No. 28-5, at 20.) The back of these checks will provide a statement advising that Class Members who endorse the check by signing and depositing the check

---

[2] The Settlement Agreement is attached as Exhibit C to the Declaration of Plaintiff's counsel, Trenton R. Kashima. (ECF No. 28-5.)

will opt-in to a FLSA release. (*Id.* at 27.) "Any class member who does not opt-out of the Settlement but does not cash their checks shall be deemed to waive all claims under the settlement that were or could have been pled in the operative complaint . . . except for a claim under the Fair Labor Standards Act." (*Id.*)

Any unclaimed settlement funds will escheat to the State until it is claimed. No portion of the Settlement fund will revert to the Defendants.

At the hearing, Plaintiff's counsel explained that there were errors in the calculations he proposed in his declaration in support of preliminary approval. Thereafter, counsel submitted a supplemental declaration clarifying that the reasonable estimate of the total liability would range between $554,441.12 and $920,309.70, (Dkt. No. 36 at 8), instead of the estimated $2 to $5 million proposed in the motion, (ECF No. 28-1 at 25). Counsel also explained that while Defendants agreed to produce 30% (or 34) of the class members' payroll information, the sample set was selected randomly, by selecting every third name from the list to ensure that neither party could "cherry-pick" the data set. (ECF No. 36 at 3.) Moreover, Plaintiff confirmed the accuracy of the records by comparing her experiences to her own employee records and employee records of others. (*Id.*)

## II. DISCUSSION

Plaintiff's motion requests preliminary certification of a Rule 23 class as well as preliminary approval of settlement terms. The Court will address first the request for certification, and then the fairness of the terms of the Settlement.

### A. General Standards

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 168, 1276 (9th Cir. 1992). However, when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Court must first assess whether the proposed class meets the certification requirements and then

whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Id*.

"[S]ettlements of collective action claims under the FLSA also require court approval." *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69, (2013). Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be settled without supervision of either the Secretary of Labor or a district court." *Nen Thio*, 14 F. Supp. 3d at 1333. When confronted with a motion to settle an FLSA claim, the court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* (internal punctuation and citations omitted).

**B. Class Certification under Rule 23**

The Court will first address whether Plaintiff's proposed settlement class meets the standard for preliminary class certification.

When ruling on class certification in the settlement context, the court "must pay undiluted, even heightened, attention to class certification requirements because, unlike in a fully litigated class action suit, the court will not have future opportunities to adjust the class, informed by the proceedings as they unfold." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

**i.  Proposed Settlement Class**

Plaintiff seeks provisional certification for the following class for settlement purposes only:

> all persons who, during the Class Period, have previously been or currently are employed in California by Libre Technology, Inc. dba Student Loan Service, Docupop, and Student Loan Service, US, as an hourly-paid 'non-exempt' employee from June 21, 2014, to the date of Preliminary Approval.

(ECF No. 28-1, at 11.)

## ii. Rule 23(a) and (b)(3) Requirements

Rule 23(a) establishes four prerequisites for class certification: 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy. Fed. R. Civ. P. 23(a). Class actions under Rule 23(b)(3), like the one asserted by Plaintiff, must meet two additional requirements. First, the common questions must predominate over individual questions. Fed. R. Civ. P. 23(b)(3). Second, the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### 1. Numerosity

Plaintiff contends the settlement class meets the numerosity requirement. Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the present case, the parties established that there are 108 putative class members. Joinder has been deemed impracticable in cases involving as few as 25 class members, *see Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968), and a survey of representative cases indicates that classes consisting of more than 75 members usually satisfy the numerosity requirement of Rule 23(a)(1). 7A Wright, Miller & Kane Federal Practice and Procedure: Civil 3d § 1762 (2005).

The Class Members are too numerous to join as plaintiffs, therefore, the settlement class meets the numerosity requirement.

### 2. Commonality and Predominance

Plaintiff next contends the settlement class meets the commonality and predominance requirements.[3] Commonality is met if "there are any questions of law or

---

[3]     Courts often examine "commonality under Rule 23(a) together with predominance under Rule 23(b)(3)." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *6 (N.D. Cal. May 5, 2017); *Amchem Prods.*, 521 U.S. at 609 ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.")).

fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that plaintiffs show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 565 U.S. 338, 350 (2011). Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted). "Rule 23(b)(3) requires a showing that questions common to the class predominate." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013).

In this case, each Class Member had similar job duties, were subject to the same alleged failure to pay for all hours worked and overtime wages, were not provided meal and rest breaks (or the resulting pay premium), and were all aggrieved employees pursuant to PAGA. The Class's alleged injury stems from Defendants' common business practice, i.e. Defendants' commission/bonus payment model, common policies and procedures, and uniform time clock system. (ECF No. 28-2, at 3, 9.) Defendants' employees worked for a single location and were supervised by a single set of managers. Thus, the Class Members' claims share common questions of law and fact, including, *inter alia,* whether they were not compensated for preliminary and postliminary work, overtime wage premiums, provided with accurate written wage statements, timely paid earned wages, and failed to receive the required meal and rest breaks. *See Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *5–6 (E.D. Cal. Nov. 27, 2012) (whether defendant failed to abide by "the requirement to pay overtime and to provide meal and rest periods, proper wage statements, and payment of all wages upon termination" constituted common questions of law or fact satisfying commonality requirement for actions brought pursuant to FLSA and the California Labor Code).

Accordingly, the proposed settlement class meets the commonality and predominance requirements.

### 3. Typicality

Plaintiff also contends the settlement class meets the typicality requirement. Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff must be a member of the class he or she seek to represent and they must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The representative claims are typical if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff's claims arise from the same facts as those of the class. Additionally, Plaintiff's claims are based on the same legal theories as those of the class. Therefore, Plaintiff meets the typicality requirement.

### 4. Adequacy

Plaintiff also asserts that the class meets the adequacy requirement. Representative parties must be able to "fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff "does not have conflicts of interest with the proposed class" and is "represented by qualified and competent counsel." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007). Adequacy of representation is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 948 (9th Cir. 2011) (quoting in part *Staton*, 327 F.3d at 960).

Plaintiff is represented by two law firms: Finkelstein & Krinsk LLP, and Sommers Schwartz, PC. Plaintiff's representation from both firms—i.e., Mr. Trenton Kashima, and Mr. Kevin Stroops—have experience prosecuting employment claims and class actions. (ECF No. 28-2, at 2.) Plaintiff and Class Counsel have no conflicts of interest with other Class Members. In addition, as discussed above, Plaintiff's claims are typical of those of other Class Members.

Therefore, Plaintiff satisfies the Rule 23(a) class certification prerequisites.

## 5. Superiority

The superiority requirement provides a list of four non-exhaustive factors to determine whether the class action device is superior to individual actions. Fed. R. Civ. P. 23(b)(3)(A)-(D). Those factors are:

> (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) The difficulties likely to be encountered in the management of a class action.

*Id.* The root inquiry motivating these factors is whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

In the instant case, factors (C) and (D) are irrelevant because the parties have agreed to a pre-certification settlement. *Amchem*, 524 U.S. at 620. The 108 individual class members have some—but not an overwhelming—interest in controlling the prosecution of their own actions; individual legal costs would likely outstrip any potential recovery (approximately $2,361 per Class Member under the Settlement). Additionally, this Court knows of no concurrent litigation pending concerning the issues in this case. The Court finds the superiority requirement sufficiently met.

### iii. The Class is Preliminarily Certified, Class Counsel Appointed

After review of the proposed class certification, the Court determines that the requirements of Rule 23(a) and (b)(3) are satisfied. Plaintiff's request to preliminary certify the class is **GRANTED**.

Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Here, as addressed above, Class Counsel have experience litigating class actions and their request to be appointed class counsel is granted. Also granted is Plaintiff's

request to be named Class Representative.

**B. Conditional Certification under the FLSA**

The FLSA establishes an opt-in collective action procedure for employees allegedly denied wages and overtime pay. *See* 29 U.S.C. § 216(b). Under the FLSA, "one or more employees" may file a civil action—termed a collective action—"in behalf of himself or themselves and other employees similarly situated." *Id.*

Plaintiff has moved for preliminary approval of a Class Action settlement which would resolve her FLSA claim. However, she has yet to move for certification of the FLSA collective. (*See* ECF No. 28-1, at 10 (explaining how Class Counsel had prepared a motion for FLSA conditional certification but that the parties thereafter stipulated to tolling the limitations period during settlement discussions).) "When the parties seek settlement approval of an FLSA collective action claim before seeking certification of a collective action, courts in this circuit first consider whether certification is appropriate and then whether the proposed settlement is substantively acceptable." *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 322–34 (N.D. Cal. 2013).

The Ninth Circuit recently issued *Campbell v. City of Los Angeles*, to provide guidance on what "similarly situated" means in the FLSA context. 903 F.3d 1090, 1110–17 (9th Cir. 2018). According to the Court, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. *Campbell* specified a two-step approach for determining whether a FLSA collective action may proceed. In the first step, the plaintiff moves for preliminary certification and the district court applies a "lenient [standard] . . . . loosely akin to a plausibility standard," with the analysis "focused on a review of the pleadings but [ ] sometimes [ ] supplemented by declarations or limited other evidence." *Id.* at 1109. If granted, "preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id.* In the second step,

typically following discovery, the employer may move for decertification, showing the "similarly situated" requirement has not been satisfied, prompting the court to "take a more exacting look at the plaintiffs' allegations and the record." *Id.*

Applying the *Campbell* framework, the Court finds that preliminary certification of the FLSA class is appropriate. Plaintiff's FAC proposed to define the collective as "[a]ll current and former Agents who worked for any Defendants at any time from June 21, 2015 through [preliminary approval]." (ECF No. 23, at 17.) The FAC contends that the members of the FLSA collective are similarly situated because they were all employed in similar positions, performed the same job duties, and were subject to the Defendants' pattern, practice and policy of willfully failing to accurately record their work times, and pay premium overtime work wages. (*Id.* at 18.) At this preliminary stage, the Court is satisfied that the "putative 'party plaintiffs are alike in ways that matter to the disposition of their FLSA claims,' as they held similar jobs with similar functions and were uniformly subject to [Defendants'] compensation policies that led to the alleged FLSA violations here, presenting 'similar issue[s] of law or fact material to the disposition of their FLSA claims.'" *Smothers v. NorthStar Alarm Servs.*, LLC, No. 217CV00548KJMKJN, 2019 WL 280294, at *8 (E.D. Cal. Jan. 22, 2019) (quoting *Campbell*, 903 F.3d at 1117).

For the foregoing reasons, the Court will *sua sponte* preliminarily certify the FLSA group.

## C. Preliminary Settlement Approval

### 1. Legal Standards

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate and reasonable." *Staton*, 327 F.3d at 959 (internal quotations omitted).

In making this determination, a court may consider what are termed the *Churchill* factors: (1) the strength of the plaintiff's case; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) the extent of discovery completed,

and the stage of the proceedings; (6) "the experience and views of counsel"; (7) "the presence of a governmental participant"; and (8) "the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Moreover, "the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Because some of the *Churchill* factors cannot be fully assessed until the final fairness hearing, courts sometimes opt for a more curtailed fairness assessment, reasoning that "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations omitted). Instead, courts at the preliminary hearing stage tend to consider only whether the proposed settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has [] obvious deficiencies; (3) [] improperly grant[s] preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (citations omitted).

Ultimately, any fairness determination requires the Court to "focus[] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). As a corollary, it is not the Court's role to "delete, modify or substitute certain provisions" of the settlement. *Hanlon.*, 150 F.3d at 1026 (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)). Rather, "[t]he settlement must stand or fall in its entirety." *Id.*

Similar considerations pertain to settling collective actions under the FLSA. "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court." *Semiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (unpublished)

(citing *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013)). Courts within the Ninth Circuit generally apply the Eleventh Circuit standard, which asks whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Nall*, 723 F.3d at 1308 n.3. "In conducting this inquiry, courts often turn to factors relied on in preliminary certification of Rule 23 class actions to the extent those factors apply to FLSA actions." *Smothers*, 2019 WL 280294, at *9 (citing *Maciel v. Bar 20 Dairy*, LLC, No. 117CV00902DADSKO, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018)).

### 1. Discussion

Having appraised Plaintiff's motion, the terms of the Settlement, the proposed Class Notice forms, hearing oral argument, and Plaintiff's supplemental declaration, the Court concludes that there still remains an issue concerning the FLSA notice and opt-in procedures that will require modification, and consequently, the Court DENIES preliminary approval of the class settlement.

### i. FLSA Notice and Opt-in Procedures are Flawed

The Court need not venture down the *Churchill* factors before being presented with an obvious deficiency. "Namely, the proposed FLSA notice and opt-in procedures are fatally flawed." *Smothers*, 2019 WL 280294, at *10.

Recall that under the Settlement, "each Class Member who timely cashes (or otherwise negotiates) his or her settlement check will be deemed to have opted into the Action for purposes of the FLSA and, as to those Settlement Class Members, the Released Claims will include any and all claims the Settlement Class Members may have under the FLSA arising under or related to the alleged claims during the Class Period." (ECF No. 28-1, at 14.) Plaintiff proposes to include the following endorsement on each check:

> By cashing this check, you are releasing any and all claims, rights, causes of action and liabilities, whether known or unknown, for any and all types of relief under the Fair Labor Standards Act, including without limitation claims for failure to pay minimum wage, overtime, and for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage,

> liquidated damages, interest, and/or penalties tied to such claims, that arose or accrued at any time from June 21, 2014 through [Preliminary Approval Date], arising from your employment with Libre Technology, Inc. Your release does not include, however, any claims, rights, causes of action or liabilities that cannot be released as a matter of law.

(ECF No. 28-5, at 27.)

Plaintiff's proposed opt-in procedure flies squarely in the face of the FLSA. Section 216(b) of the FLSA clearly provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and *such consent is filed in the court in which such action is brought*." 29 U.S.C. § 216(b) (emphasis added). The Supreme Court has construed this statutory language as "requiring written consent filed with the court, albeit not in formal holdings." *Smothers*, 2019 WL 280294, at *10-11 (quoting *Genesis Healtchare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (employees "become parties to a collective action only by filing written consent with the court")). The requirement of an affirmative opt-in by putative FLSA collective action plaintiffs, made to the court, is confirmed by Ninth Circuit case law: "[a] FLSA collective is not formed until other plaintiffs file consent forms with the court joining (that is, 'opting into') the original named plaintiff's case." *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1109 n.1 (9th Cir. 2018) (citations omitted)).

Here, Plaintiff proposes to effectuate FLSA opt-in by check, rather than by way of consent forms filed with the Court. This is impermissible under § 216(b). Moreover, Plaintiff's proposal is additionally defective in that it would have "FLSA collective members opt-in and receive their settlement in a single stroke and prior to the court's final settlement determination." *Smothers*, 2019 WL 280294, at *11. The reasoned holdings of sister courts facing similar opt-in by check procedures inform this Court's conclusion that the Settlement fails for want of sufficient opt-in procedures. *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019) ("Many courts, having consulted § 216(b)'s requirements, have rejected this opt-in by settlement check proposal."); *Smothers*, 2019 WL 280294, at *11 (citing *Johnson v. Quantum Learning Network, Inc.*, No. 15-CV-05013-LHK, 2016 WL 8729941, at *1 (N.D. Cal. Aug. 12, 2016) (finding settlement provision allowing FLSA members to opt-

in by cashing or depositing settlement checks "does not comply with the plain language of the FLSA" and constitutes an obvious deficiency that precludes preliminary approval of Rule 23 and FLSA settlement), and *Kempen*, 2016 WL 4073336, at *9 ( ("The parties provide no support for their assertion that having class members sign, then cash, checks with purported opt-in language printed on the back ... complies with the plain-language requirements of § 216(b).").

At the preliminary approval hearing, Plaintiff's counsel indicated that the parties are prepared to establish an opt-in procedure but sought the Court's guidance on a more streamlined process because the FLSA two-step process will add delay and increase administrative costs that will come out of the funds for the class. Counsel also requested instruction on how much in funds to allocate to the FLSA claims and what to do with unallocated claims from the FLSA funds. The Court provides the parties some guidance based upon caselaw, but ultimately the parties must create an opt-in procedure and allocation of funds that comply with the FLSA.

While it has been recognized that district courts in the Ninth Circuit are divided as to whether a Rule 23 class action can co-exist with a related collective action under the FLSA, *Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081, 1093 (9th Cir. 2011) (recognizing the split but declining to address the issue because the plaintiff abandoned the FLSA claim), district courts generally allow, if certain requirements are met, approval of a hybrid FLSA Collective/Rule 23 class action settlement. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015) ("In summary, a Rule 23 class action and a FLSA collective action can be prosecuted in the same action.").

District courts require a separate opt-in procedure which is mandated by Section 216(b) as well as a separate allocation of payments for Rule 23 and FLSA claims. *See Cortez v. Vieira Custom Chopping, Inc.*, No. 17cv1647-DAD-SKO, 2019 WL 4596782, *8, 11 (E.D. Cal. Sept. 23, 2019) (preliminarily approving class action and collective action settlement with opt-in procedure and separate allocation of funds for Rule 23 and FLSA members); *Millan,* 310 F.R.D. at 609, 613 (denying preliminary approval due to insufficient opt-in procedure and "the settlement must create separate funds for payment

of the Rule 23 claims and the FLSA claims"); *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895, at *7-8 (S.D. Cal. Feb. 22, 2017) (denying preliminary approval due to "suspect" opt-in structure and noting that "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims"); *Khanna v. Intercon Sec. Systems, Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *2 (E.D. Cal. Apr. 8, 2014) (approving hybrid settlement that allocated two-thirds of net settlement amount to state claims and one-third of net settlement amount to FLSA claims); *Pierce v. Rosetta Stone, Ltd.,* No. C 11-01283 SBA, 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (same).

Here, the preliminary approval does not include an opt-in procedure or a separate allocation of payments for FLSA claims. For purposes of the parties' interest in streamlining the process, other courts have noted that the parties may direct putative FLSA Group members to send opt-in forms to the Settlement Administrator and then having Plaintiff file those opt-in forms with the court. *See Smothers*, 2019 WL 280294, at *12. However, the Court leaves it up to the parties to present an opt-in procedure and allocation of separate funds that comply with Section 216(b).

Finally, as to the Notice, because of differences between Rule 23 class actions and FLSA collective actions, courts considering approval of settlements in hybrid actions consistently require class notice forms to explain: "(1) the hybrid nature of th[e] action; and (2) the claims involved in th[e] action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing." *Millan*, 310 F.R.D. at 608 (quoting *Pierce*, 2013 WL 1878918 at *4).

Here, the proposed notice does not explain the hybrid nature of the case and instead refers to a "class action settlement" and does not mention Rule 23 or the FLSA.

Because the Court must approve of or reject a settlement agreement in its entirety, this defect requires the court to **DENY** the motion to approve the Settlement.[4]

### ii. The Settlement Amount

In its tentative order, the Court questioned whether Plaintiff had the necessary information to make an educated calculation about the estimated recovery percentage based on the payroll information and timeclock entries for thirty percent of the Class (34 putative class members) and whether the sample set was under-valuing the potential total liability. In the supplemental declaration, Plaintiff's counsel indicated that the sampled employees were randomly selected by selecting every third name from the list so neither party could "cherry-pick" the data set. (ECF No. 36 at 2.) Moreover, Plaintiff confirmed the accuracy of the records by comparing her experiences to her own employee records and employee records of others. (*Id.* at 3.) The Court is now satisfied that the 30% sample set was randomly selected so as not to be skewed in favor of one party.

The Court also noted an obvious deficiency in the percentage of the recovery in relation to the full potential recovery. The amount of settlement "is generally considered the most important [consideration under *Churchill*], because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the West*, No. C–13–2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citation omitted). A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial; nor must the settlement provide full recovery of the damages sought to be fair and reasonable. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class

---

[4] In its tentative order, the Court also questioned the inconsistent operative time period where the FAC states claims arising from June 21, 2015 but her Motion and Settlement Agreement are premised on a June 21, 2014 start date. At the hearing, Plaintiff's counsel explained that the June 21, 2015 date is based on the FLSA statute of limitations period and the June 21, 2014 date is based on the Rule 23 class claims that include a four-year statute of limitations. The Court accepts that there are two operative time periods. However, this confusion demonstrates that the instant Motion fails to explain that the settlement pertains to a hybrid Rule 23 class action/FLSA collective action.

counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks, citation, and footnote omitted). "To evaluate the range of possible approval criterion, . . . courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009).

First, Plaintiff's calculation based on the Gross Settlement Amount of $425,000 was improper. (ECF No. 28-1, at 22.) It is the practice among the district courts in the Ninth Circuit to arrive at the recovery percentage by dividing the maximum verdict value by the amount *actually* distributed to class members. *See e.g.*, *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *14 (N.D. Cal. Apr. 29, 2011) (using the net settlement amount for the "actual settlement" that "members will receive" to calculate the percentage of recovery); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG(BLM), 2009 WL 4809646, at *7 (S.D. Cal. Dec. 9, 2009) (calculating the percentage according to the net fund value). Here, Plaintiff should have used the Net Settlement Amount, $255,062.50 in the calculations.

The Court also had grave concerns with the 5.1% to 12.75% recovery percentage range based on dividing the Net Settlement Amount of $255,062.50 by the maximum verdict value, of $2 to $5 million. *See Viceral v. Mistras Group, Inc.*, 15-cv-02198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (referencing *Harris*, 2011 WL 4831157, at *15 (denying final approval of a settlement where the actual payout to the class was 6.56% of the maximum verdict value), and *Cotter v. Lyft, Inc.,* 176 F. Supp. 3d 930, 940 (N.D. Cal. 2016) (denying "as a major defect in the agreement" a proposed settlement for 8.82% of the maximum verdict)).

At the hearing, Plaintiff's counsel acknowledged the Court's disapproval of the damages calculations and confessed that an error had been made on the total potential liability. Plaintiff's counsel submitted a supplemental declaration clarifying the damages amount stating that a reasonable estimate of the total liability would be between

$554,441.12 and $920,309.70 which represents between 28% and 46% of the total liability. Based on these amended damages amount, the Court concludes that these percentages are significant values to the Class Members.

### iii. Clear Sailing Provision and Attorney's Fees

The Court also expressed concerns about the "clear sailing" provision for attorney's fees, whereby Defendants have agreed not to contest any award of attorney's fees that does not exceed 30% of the Gross Settlement Amount, or $127,500.00. (ECF No. 28-5, at 24.)

"Clear sailing" provisions carry the risk of "enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *In re Bluetooth Headset Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000)). According to the Ninth Circuit, the dangers of clear sailing provisions are not obviated merely by the presence of a mediator. *Id.* "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize carefully the relationship between attorney's fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* at 948 (citing *Staton*, 327 F.3d at 954).

In this case, the generous amount of attorney's fees which are agreed upon under the clear sailing provision strikes the Court as particularly problematic. Class Counsel seeks an award of approximately 30% of the Gross Settlement Amount, i.e., $127,500.00, which exceeds the 25% benchmark rate employed by the Ninth Circuit. *Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.").

"Selection of the benchmark or any other rate must be supported by findings that take into account all the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). But Class Counsel does not explain why a 25% benchmark rate is appropriate, much less a 30% one. (*See* ECF No. 28-1, at 28.) This

alone is grounds for rejecting the proffered fee award. *See Chiaramonte v. Pitney Bowes, Inc.*, No. 06–1507, 2008 WL 510765, at *7 (S.D. Cal. Feb. 25, 2008) (declining to award requested fee amount where the class counsel's assertion of exceptional representation "is supported by little more than conclusory statements about the expense, time, and risk inherent in all class action litigation").

At the hearing, Plaintiff's counsel indicated that when they file their motion for attorney's fees, they will set forth, with legal authority and supporting documentation, why the clear sailing provision and proposed attorney's fees is reasonable. At the preliminary approval stage, the Court does not need to determine attorney's fees; however, counsel should address the Court's concern when they file their motion for attorney's fees. *See Millan*, 310 F.R.D. at 613 (attorney's fee request need not be resolved at preliminary approval but the plaintiffs' counsel "should be mindful of this issue and be ready to present a lodestar calculation in connection with their motion for attorneys' fees and for final approval").

## III. Conclusion

Accordingly, Plaintiff's Motion for Preliminary Approval of Class Action is **GRANTED in part and DENIED in part.**

Specifically, the Court **GRANTS** Plaintiff's request to (1) preliminarily certify the Rule 23 class, (2) be named Class Representative, (3) and appoint Trenton R. Kashima and Kevin J. Stroops as class counsel. The Court also *sua sponte* conditionally certifies the FLSA collective. The Court **DENIES** her request for preliminary approval of the Settlement.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The Court will permit the parties an additional sixty (60) days from the issuance of this Order to file a renewed motion for preliminary approval of class action settlement that cures the deficiencies identified by this Order.

IT IS SO ORDERED.

Dated:  November 13, 2019

Hon. Gonzalo P. Curiel
United States District Judge