1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EBONY HUDSON, an individual and on
behalf of all others similarly situated,

                                        Plaintiff,

v.

LIBRE TECHNOLOGY INC., doing
business as Student Loan Service,
Docupop, and Student Loan Service, US;
ANTONY MURIGU; JASON
BLACKBURN; and BRIAN
BLACKBURN,

                                        Defendants.

Case No.:  3:18-cv-1371-GPC-KSC

**ORDER GRANTING PLAINTIFF'S
RENEWED UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
AND COLLECTIVE ACTION
SETTLEMENT**

**[ECF No. 40.]**

Before the Court is Plaintiff Ebony Hudson's renewed unopposed motion for preliminary approval of class and collective action settlement in a wage and hour dispute. (ECF No. 40.)  After a review of the briefing and supporting documentation, on April 21, 2020, the Court directed Plaintiff to submit supplemental briefing and documentation to address a number of deficiencies and discrepancies noted by the Court.  (ECF No. 42.) On May 1, 2020, Plaintiff, after meeting and conferring with Defendants, filed a supplemental brief with supporting documentation in support of her renewed motion for preliminary approval.  (ECF No. 43.)  Plaintiff has also filed a Revised Class Notice.

(ECF No. 43-1.)

Plaintiff had previously filed a motion for preliminary approval of class action settlement which this Court granted in part and denied in part on November 13, 2019. (ECF No. 37.)  In that order, the Court preliminarily granted Plaintiff's request to (1) preliminarily certify the Rule 23 class, (2) be named Class Representative, (3) and appoint Trenton R. Kashima and Kevin J. Stroops as class counsel.  (*Id.*)  The Court also sua sponte conditionally certified the FLSA collective.  (*Id.*)  However, the Court denied preliminary approval of the settlement due to Plaintiff's failure to include a Fair Labor Standards Act ("FLSA") opt-in procedure as well as including provisions in the Class Notice concerning an opt-in procedure for the FLSA collective action settlement.  (*Id.*)  In response, Plaintiff has refiled the instant renewed unopposed motion for preliminary approval of class action settlement and collective action settlement as well as the Court ordered supplemental briefing.

After a review of the briefs, supporting documentation and the applicable law, the Court **GRANTS** Plaintiff's renewed unopposed motion for preliminary approval of class/collective action settlement.

# I.      BACKGROUND

## A. Plaintiff's Claims

On June 21, 2018, Plaintiff Ebony Hudson ("Plaintiff") brought this putative Rule 23 class action/FLSA collective action against Defendants Libre Technology, Inc., Anthony Murigu (its owner), Jason Blackburn (its Chief Operating Officer), and Brian Blackburn (Director of Operations) for violations of California laws and FLSA (collectively "Defendants").  (ECF No. 1.)

On April 12, 2019, the Court granted a joint request to allow Plaintiff to file a first amended complaint ("FAC").  (ECF No. 23.) According to the operative FAC, Plaintiff was employed by Defendants as a "Member Success Coordinator," or "Agent," responsible for making calls to prospective customers and assisting individuals in applying for student loan consolidations and repayment programs.  Plaintiff alleges that

Defendants failed to pay coordinators for the time required to startup, login, and sign out of their computer systems before starting and ending their day.  As a result, Plaintiff and other coordinators were required to work off the clock when booting up and shutting down their computer systems.  In addition, Plaintiff alleges that Defendants failed to pay its coordinators the entire amount due under its commission-based compensation system, failed to include bonus pay when calculating the regular rate of pay, failed to pay for all overtime hours, and failed to provide Plaintiff and other coordinators with uninterrupted, work-free 30-minute meal periods and paid 10-minute rest breaks.

On the basis of these allegations, Plaintiff's FAC raises the following claims: (1) agents were not paid for all wages and overtime due during their employment pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.; (2) agents were not paid minimum wage and regular wages for all hours worked pursuant to California Labor Codes sections 223, 1194, 1197, 1197.1 and IWC Wage Order 4; (3) agents were not paid overtime pursuant to California Labor Codes sections 510, 1194, 1198 and IWC Wage Order 4; (4) agents were subject to unlawful deductions in violation of California Labor Codes sections 221 and 223; (5) agents were not provided rest and meal periods pursuant to California Labor Codes sections 226.7 and 512; (6) agents were not timely paid wages owed in accordance with California Labor Codes sections 202, 203, and 203; (7) Defendants failed to provide accurate wage statements in accordance with California Labor Code section 226; (8) Defendants engaged in unfair competition in violation of California's Unfair Competition Law under Business and Professions Code section 17200 *et seq*.; (9) Defendants breached the covenant of good faith and fair dealing; and (10) that by engaging in these alleged practices, Plaintiff and all others similarly situated were entitled to recover penalties pursuant to the Private Attorney General Act ("PAGA") pursuant to California Labor Code section 2698.

### 2. Negotiations, Early Disclosure, and Mediation

Plaintiff is represented by Trenton Kashima, of Finkelstein & Krinsk LLP, and Kevin J. Stroop, of Sommers Schwartz, PC ("Class Counsel").

Shortly after the filing of the original complaint, Class Counsel began exploring the possibility of settlement with Defendants, each of whom filed answers denying allegations of wrongdoing.  As a result of these settlement talks, the parties engaged in early informal disclosure of information, during which time Defendants indicated that there were 108 putative class members.  Defendants provided Class Counsel with payroll information and timeclock entries from a random sampling of 30% of the putative class, or 34 employees.   (ECF No. 40-4, Kashima Decl. at ¶ 4.)  The information received also suggested that the putative class members may have other claims under California labor laws.  (*Id.*)

Based on this sample data, Class Counsel developed several class-wide damages models, estimating that a favorable judgment would realistically range from $554,441.12 and $920,309.70, including statutory penalties and treble damages if Plaintiff's class action was successful at trial.  (*Id.* at ¶ 5.)

On January 24, 2018, the parties attended a full-day mediation session with Steven Rottman, a mediator who Plaintiff alleges has extensive experience with wage and hour cases.  At the conclusion of the mediation, the parties signed a memorandum of understanding detailing the material terms of the Settlement.  (*Id.* at ¶ 7.)  Thereafter, the parties jointly moved to allow Plaintiff to amend her complaint to add additional claims as to lunch break violations uncovered during the course of the parties' settlement discussions.  (*Id.*)

**3. Proposed Modified Settlement**

The Settlement Agreement seeks to certify a Rule 23 class of

all persons, who during the Class Period, have previously been or currently are employed in California by Defendants, as a "non-exempt" employee from June 21, 2014 to the date of Preliminary of Approval and who do not exclude themselves from the settlement as provided by this Settlement Agreement and the Class Notice (the "Rule 23 Class Period").

Based on the Court's prior order, the Settlement Agreement was amended to

specify a separate FLSA Sub-Class, as previously conditionally certified by the Court, to include:

> all persons who are members of the Rule 23 Class and who were employed by Defendant in California as a non-exempt employee at any time from June 21, 2015 to the date of Preliminary Approval and who opt-in to the FLSA Sub-Class as provided by this Settlement Agreement and the Class Notice (the "FLSA Sub-Class Period").

(ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. at ¶ 4.)  While the compensation under the settlement remains unchanged, a portion of the Gross Settlement Amount is segmented to compensate for the FLSA Sub-Class for their FLSA Release.  (*Id.* at ¶¶ 19, 22, 43.)

The Settlement Class will receive $425,000, inclusive of all payments to Settlement Class Members, the Class Counsel Fees and expenses, incentive award to Plaintiff, the settlement administration costs, and PAGA payments to the LWDA.  (ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. at ¶ 20.)  Plaintiff estimates the following allocation of the Gross Settlement Amount:  $7,000[1] to Phoenix Settlement Administrators, the proposed Settlement Administrator, (ECF No. 40-4, Kashima Decl. ¶ 13; ECF No. 43-3, Suppl. Kashima Decl. ¶ 11); $6,000 to Plaintiff as an incentive award compensating her for her service as the Class Representative, (*id.* at ¶¶ 13, 59(a)); and a payment of up to $127,500.00 for attorneys' fees and $15,000.00 for litigation cost, (*id.* at ¶¶ 12, 59(b)).  The parties also agreed $21,250 or five percent of the settlement proceeds which will be allocated to PAGA penalties (the "PAGA Payment"), $15,937.50 (or 75 percent) of which will be paid to the California Labor Workforce and Development

---

[1] The Court noted a discrepancy concerning the settlement administrator's fee between the motion and Kashima declaration indicating $7,000 for administration fees, and the settlement agreement and the Class Notice indicating $30,000 in administration fees.  (ECF No. 42 at 2-3.)  In the supplemental brief, Class Counsel explains that the settlement agreement provided an estimate of the maximum anticipated amount of fees based on his experience; however, after providing the settlement agreement to the administrator, it was able to provide a concrete estimate and discounted pricing of $7,000.  (ECF No. 43-3, Kashima Decl. ¶¶ 10-11.)  Therefore, Class Plaintiff has revised the Class Notice which now references the current $7,000 Settlement Administration cost estimate.  (ECF No. 43-1, Ex. A, at p. 3.)

Agency ("LWDA") to settle claims and remedies under Labor Code, sections 2699 *et seq.*, (*id.* at ¶ 14), and the remaining amount $5,312.50 (25%) shall be allocated pro rata to the participating Class Members.  (*Id.*)  No portion of the settlement funds shall revert to the Class.  (*Id.*)  Instead, any unclaimed settlement funds will escheat to the State, in the same manner as any unclaimed wages, until it is claimed.[2]  (*Id.* at ¶ 52.)

Plaintiff estimates that the portion of the settlement to be shared by the Settlement Class (the "Net Settlement Amount"), will be $240,562.50.[3]  (ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. at ¶ 21; ECF No. 40-4, Kashima Decl. ¶ 14; ECF No. 43-3, Suppl. Kashima Decl. ¶¶ 7, 8.)  Additionally, $13,000 of the Settlement funds will be allocated to the Settlement of the FLSA claims (the "FLSA Settlement Amount").  (ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. at ¶ 22.)  The Settlement Class will share the opportunity to receive $253,562.50 in compensation.  The Net Settlement Amount will be apportioned and paid out entirely, and automatically, to all Settlement Class Members.

A participating Class Member's share of the Settlement ("Settlement Share") will be calculated as follows:

First, the estimated "Net Settlement Amount" shall be determined by subtracting the estimated Class Counsel Fees and Expenses Payment, Class Representative Payments, the Settlement Administration Costs, FLSA Settlement Amount, and PAGA Payment due to the LWDA.

Second, the estimated "Net Settlement Amount" shall be divided by the total number of workweeks for all potential Settlement Class Members to calculate the "Workweek Value" (i.e., the amount to be allocated for each workweek)

---

[2] The Court pointed out that the Unclaimed Wages Fund no longer accepts unclaimed funds but such funds are to be submitted to the Unclaimed Property Fund administered by the California State Controller.  (ECF No. 42 at 3.)  In his supplemental declaration, Class Counsel agrees and has made the change and added the Unclaimed Property Fund as the recipient of the unclaimed funds to the Revised Class Notice. (ECF No. 43-3, Suppl. Kashima Decl. ¶ 3; ECF No. 43-1, Ex. A, at p. 6.)

[3] The Court noted a discrepancy as to the Net Settlement amount stated in the Class Notice and the motion.  (ECF No. 42 at 3.)  In response, Class Plaintiff has adequately explained the discrepancy regarding the LWDA calculation and Class Plaintiff has revised the Class Notice, (ECF No. 43-3, Suppl. Kashima Decl. ¶¶ 7, 8), and now references the current Net Settlement amount to be $240,562.50.  (ECF No. 43-1, Ex. A, at p. 3.)

> Third, each Settlement Class Member's Settlement Share will be determined by multiplying the Class Member's total number of weeks worked during the Class Period by the Workweek Value.

(*Id.* at ¶¶ 18, 21, 55.)  The FLSA Settlement Amount will be distributed in a similar "per workweek" manner for the FLSA Sub-Class.  (*Id.* at ¶ 56.)   A participating Class Member will receive $2,347.80 (or $47.92 per workweek), on average, under the Settlement, assuming he/she submits a FLSA claim.  (ECF. No. 40-4, Kashima Decl. ¶¶ 16-17.)  However, regardless of their decision to opt-in to the FLSA Sub Class, the average Settlement Class Member will automatically receive a check for $2,227.43 (or $45.46 per workweek).  (*Id.* at ¶ 16.)  The amount due to each Settlement Class Member under the Settlement, less taxes and withholdings, will be provided by check.  (ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. ¶¶ 51, 57.)

In exchange, the Settlement Class will release Defendants from all claims.  (*Id.* ¶ 61.)  Excluded from the Released Claims are any claims arising under the FLSA except those FLSA Sub-Class Members, who opted to receive FLSA Settlement Share, will be deemed to have released all claims under FLSA.  (*Id.* at ¶ 62.)

### 4. Revised Class Notice

The parties proposed that the Revised Class Notice, (ECF No. 43-1) as well as the procedure set forth in the Settlement Agreement for providing notice to the Class Members will provide the best notice practicable under the facts and circumstances of this case.

The Revised Class Notice will be accompanied by the Class Member Information Sheet which will be including the Class Member's first and last name, last known address, and the estimated amount of the Class Member's Settlement Share, as well as a FLSA Opt-In Form and Class Action Opt-Out Form.  (ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. at ¶¶ 25, 41, 42.)  The Revised Class Notice will inform Class Members of the benefits offered under the Settlement, as well as their right to opt-out or object to the

Settlement, and the option to opt-in to the FLSA Sub-Class.  (ECF No. 43-1.)  Class Members shall have forty-five (45) days from the initial mailing of the Class Notice Packet to opt-out, object to the Settlement and join the FLSA Sub-Class.  (*Id.*)  Class Members can submit a FLSA Opt-In Form electronically at www.libreFLSAsettlement.com) or by mail.  (*Id.* at ¶ 43.)   No later than seven days after the deadline for submission of the FLSA Opt-In Form, requests to be excluded, and/or objections, the Settlement Administrator shall provide Defendants with notice of all exclusions, objections, and FLSA Opt-Ins.  (*Id.* at ¶ 44.)

## II.   DISCUSSION

The Court, in its prior order, preliminarily certified the Rule 23 class, named Plaintiff as the Class Representative and appointed Trenton R. Kashima and Kevin J. Stroops as class counsel as well as conditionally certified the FLSA collective.  (ECF No. 37.)  The Court will now address whether the revised Settlement Agreement is fair, reasonable and adequate pursuant to Rule 23(e).

### A. Preliminary Settlement Approval

#### 1. Legal Standards

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 168, 1276 (9th Cir. 1992).  However, when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).  Ultimately, any fairness determination requires the Court to "focus[] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members."  *Id.* at 960.  Courts evaluate the "settlement as a whole, rather than assessing its individual components."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

"[S]ettlements of collective action claims under the FLSA also require court approval." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69, (2013). Since an employee cannot waive claims under the FLSA, an FLSA claim "may not be settled without supervision of either the Secretary of Labor or a district court." *Nen Thio*, 14 F. Supp. 3d at 1333. When confronted with a motion to settle an FLSA claim, the court "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* (internal punctuation and citations omitted).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendment).

### 1.   Plaintiff and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." Final approval criteria-Rule 23(e)'s multifactor test, 4 NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.); *In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

Because the Court found that adequacy under Rule 23(a)(4) for purposes of class certification has been satisfied, (ECF No. 37 at10-11[4]), the adequacy factor under Rule 23(e)(2)(A) is also met.

### 2.   The Settlement was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  Here, the Settlement was negotiated after an initial disclosure of information which enabled Plaintiff to develop an individualized damages model, which approximated the value of the Settlement Class's claims on an individual and collective basis.  (ECF No. 40-4, Kashima Decl., ¶¶ 5-6.) Additionally, the parties also engaged an experienced and respected mediator in an attempt to broker a settlement.  (*Id.* at ¶ 7.)  Steven Rottman is a mediator and attorney with experience in class action litigation, including wage and hour litigations.  (*Id.*)  Yet, even with the assistance of neutral mediators, the parties' settlement negotiations extended several months and only concluded after all day mediation session.  (*Id.* at ¶¶ 4-8.)  The involvement of a mediator, as well as the lengthy and adversarial nature of the settlement negotiations, are all indicia of the "contentious" nature of the underlying negotiations.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)

---

[4] Page numbers are based on the CM/ECF pagination.

("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Therefore, this Court concludes that the settlement was negotiated at arm's length by counsel who is experienced in class action litigation.

### 3. The Relief Provided to the Class is Adequate

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement. *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013)).

### i. The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

The costs, risks, and delay of trial and appeal further support preliminary approval. Plaintiff is confident about the strength of her claims. Nonetheless, Plaintiff recognize that Defendants have factual and legal defenses that, if successful, would potentially defeat or substantially impair the value of Plaintiff's lawsuit. For example, Plaintiff could potentially be unable to certify a class or prove the merits of their claims (on a classwide basis) at trial. "The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation." *In re Nvidia Derivs. Litig.*, No., C-06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008). Indeed, appeals aside, litigating a complex case through trial is inherently perilous regardless of the strengths of merits of the claims. (ECF No. 40-4, Kashima Decl. ¶¶ 19-20.)

Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiff, or losing at

trial.  Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Thus, the costs, risks, and delay of trial and appeal Support preliminary approval.

### ii. The Proposed Method of Distributing Relief to the Class Is Effective

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

The Net Settlement Amount and the FLSA Settlement Amount provide the Class with $253,562.50 in actual relief.  *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *14 (N.D. Cal. Apr. 29, 2011) (using the net settlement amount for the "actual settlement" that "members will receive" to calculate the percentage of recovery); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG(BLM), 2009 WL 4809646, at *7 (S.D. Cal. Dec. 9, 2009) (calculating the percentage according to the net fund value).  According to Class Counsel, a reasonable estimate of the total liability would be between $554,441.12 and $920,309.70 if Plaintiff were successful at trial which represents between 28% and 46% of the total liability.

Based on the 108 Settlement Class Members, and the total number of shifts worked, Plaintiff estimates the average recovery will be $2,347.80 (or approximately $47.92 per week worked), if the Class Member submits a FLSA claim.  (ECF No. 40-4, Kashima Decl., ¶¶ 16-17.)  Settlement Class Members will not have to take any affirmative steps to secure the largest portion of the Settlement funds and can submit a simple form to be included in FLSA Subclass.  Thus, according to Plaintiff, this recovery is not illusory or insignificant.  *See Viceral v. Mistras Grp., Inc*., No. 15-CV-02198, 2016 WL 5907869, at *3, 7 (N.D. Cal. Oct. 11, 2016) (approving a California wage and hour settlement where

the class received 11.6% of the estimated total liability, or approximately $29 per work week); *Leverage v. Traeger Pellet Grills, LLC*, No. 16-CV-00784, 2017 WL 2797811, at *7 (N.D. Cal. June 28, 2017) (approving a California wage and hour settlement where the class received 18% of the estimated total liability).

As to the FLSA claim, the Settlement Agreement resolves a "bona fide dispute" under the FLSA and contains terms that seek to avoid further actions under the FLSA and other state wage and hour laws. Both sides aggressively advocated their positions, which demonstrate that the legal and factual issues presented in this action did not necessarily favor either side. While the FLSA claims are significant, they are largely duplicative of the more protective California Labor Code, adding little in the way of compensatory damages. Nonetheless, the FLSA does allow for liquidated damages, which could increase the recovery over the Settlement Class's California claims. *See* 29 U.S.C. § 260. Based on Plaintiff's estimates, the FLSA liquidated damages could add between approximately $43,009.01 and $135,412.99 for the Class's preliminary and post-preliminary work claims and an additional $3,503.81 to $6,317.47 for the Class's overtime to the total liability. (Dkt. No. 40-4, Kashima Decl. ¶ 6.) Class counsel explains that the FLSA Settlement Amount represents approximately 28% of the lower liability estimate provided for such claims and this number is reasonable given the difficulty associated with the good faith defense under the FLSA, when compared to Plaintiff's state law Labor Code claims.

In this case, assuming that all Settlement Class Members submit a FLSA claim, each Class Member will receive an additional $2.46 per week worked (the FLSA Settlement Amount ($13,000.00) divided by the number of weeks worked (5,292)) and approximately $120.37 per worker (the FLSA Settlement Amount ($13,000.00) divided by the 108 Settlement Class Members). (*Id.* ¶ 17.) But, Plaintiff estimates that only 20% to 25% of the Settlement Class will submit an FLSA Opt-In Form. (*Id.*) Accordingly, the individual FLSA Settlement Share will likely be increased by a factor of 4 or 5 times this minimum amount.

The aggregate 13,000 dollars allocated for the FLSA claim is a reasonable amount for settlement of these claims. It is important to note that if "the employer shows to the

satisfaction of the court that the act or omission . . . was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act], the court may, in its sound discretion, award no liquidated damages."  29 U.S.C. § 260. Thus, securing liquidated damages can be difficult.

Plaintiff also asks the Court to approve a PAGA settlement.  Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies."  *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009). Under PAGA, civil penalties collected are distributed between the aggrieved employees (25%) and LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement of PAGA claims must be approved by the Court.  Cal. Lab. Code § 2699(l)(2).  The proposed settlement must also be sent to the agency at the same time that it is submitted to the court.[5]  Cal. Lab. Code § 2699(l)(2).

The California Supreme and the Ninth Circuit have held that PAGA actions are fundamentally different from class actions and a plaintiff need not satisfy the class action requirements.  *Arias,* 46 Cal. 4th at 982-84; *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014).  However, in *Baumann*, the Ninth Circuit specifically declined to address "whether a federal court may allow a PAGA action otherwise within its original jurisdiction to proceed under Rule 23 as a class action."  *Id.* at 1124.

While PAGA requires a trial court to approve a PAGA settlement, district courts have noted there is no governing standard to review PAGA settlements.  *Sanchez v. Frito-Lay, Inc.,* No. 1:14cv797-DAD-BAM, 2019 WL 4828775, at *12 (E.D. Cal. Sept. 30, 2019) (acknowledging "absence of authority governing the standard of review of PAGA settlements).  Consequently, some district courts have used the guidance provided by the

---

[5] In the motion, Class Plaintiff had not indicated whether the proposed settlement had been sent to the LWDA.  In the supplemental brief, Class Counsel states that notice of the settlement was sent to the LWDA on June 7, 2019.  (ECF No. 43-3, Suppl. Kashima Decl. ¶ 12; ECF No. 43-5, Suppl. Kashima Decl., Ex. 2.)

LWDA in *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). *See Haralson v. U.S. Aviation Servs. Corp*., 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); *Sanchez v. Frito-Lay, Inc.,* 2019 WL 4828775, at *12.   In *O'Connor,* the LWDA commented,

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*O'Connor*, 201 F. Supp. 3d at 1133 (quoting LWDA Response).   Based on LWDA's Response, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." *Haralson,* 383 F. Supp. 3d at 972.

The Settlement Agreement provides $21,250 to be allocated as civil penalties divided among the aggrieved employees and the State.  (ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. at ¶¶ 14, 59.)  This amount is similar to allocations that have been approved in other settlements.  *See Viceral*, 2016 WL 5907869, at *8 (approving an allocation of $20,000 of a $6,000,000 settlement to the PAGA civil penalties); *In re Uber FCRA Litig*., No.  14-CV-05200, 2017 WL 2806698, at *1 (N.D. Cal. June 29, 2017) (approving an allocation of $7,500 of a $7,500,000 settlement to the PAGA civil penalties); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D 482, 490 (E.D. Cal. 2010) (approving settlement where parties designated a $10,000 PAGA penalty based on a $300,000 gross settlement amount).  The PAGA payment provided by the proposed Settlement is fair reasonable and falls within the range.

Here, besides submitting an opt-in form for the FLSA class, the Class Members will automatically receive their settlement checks.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig*., No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members

download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."). Accordingly, the Court finds the proposed method of distribution of class funds to be effective.

### iii. The Proposed Attorneys' Fee Award

The Settlement Agreement provides that Class Counsel may request an award of up to $127,000 in attorneys' fees and up to $15,000 in costs subject to this Court's approval. In its prior order on preliminary approval, the Court expressed concerns about the "clear sailing" provision for attorney's fees, whereby Defendants agreed not to contest any award of attorney's fees that does not exceed 30% of the Gross Settlement Amount, or $127,500.00. (ECF No. 37 at 21.) While not addressed by Plaintiff in the motion, it appears that the clear sailing provision has been removed. (*See* ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. at ¶ 59b.) In the prior order, even though the Court does not need to determine reasonableness of attorney's fees at the preliminary approval stage, the Court also expressed concern that Plaintiff sought an award of approximately 30% of the Gross Settlement Amount, i.e., $127,500.00, which exceeds the 25% benchmark rate employed by the Ninth Circuit. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). In its prior motion, Class Counsel indicated that when they file their motion for attorney's fees, they will set forth, with legal authority and supporting documentation why the proposed attorney's fees is reasonable. *See Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 613 (2015) (attorney's fee request need not be resolved at preliminary approval but the plaintiffs' counsel "should be mindful of this issue and be ready to present a lodestar calculation in connection with their motion for attorneys' fees and for final approval").

### iv. No Side Agreements Were Made in Connection with the Proposed Settlement

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3).

Plaintiff has not identified any such agreements and the Court is not aware of any other agreements.

### 4. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Here, the Settlement does not improperly discriminate between any segments of the Settlement Class as the Settlement Class Members are entitled to the same relief from the same formula. (ECF No. 40-4, Kashima Decl., Ex. 1, Sett. Ag. ¶¶ 55-56.) The only variation between the Settlement Class Members' recovery is a function of the number of weeks worked during the Class Period and whether the Settlement Class Member elects to release their FSLA claims. Given that both the civil penalties and damages accrued by Settlement Class Member would be logically proportional to the amount of time worked, the payment formula forwarded in the Settlement Agreement is rationally related to the claims asserted. *See True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) ("[D]ifferential treatment of class members may be appropriate where 'the settlement terms are rationally based on legitimate considerations.'").

Moreover, while the Settlement Agreement allows Plaintiff to seek an incentive award of up to $6,000, this payment to Plaintiff is a reasonable amount given the amount of time expended in prosecuting this case. *See Roe v. Frito-Lay, Inc.*, No. 14CV-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively reasonable' in the Ninth Circuit.") (collecting cases); *Chu v. Wells Fargo Invs., LLC*, No. C 05–4526, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs) (collecting cases). Counsel would not have been able to properly value the Settlement Class's claims without the input of Plaintiff. The Court finds that the proposed settlement treats Class Members equally.

In sum, the Court concludes that Settlement is "fair, reasonable and adequate." *See* Fed. R. Civ. P. 23(e).

## III.   CONCLUSION

Accordingly, Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Collective Action Settlement is **GRANTED.**  Having considered the papers filed in support of the motion, and the law, the Court now enters this Preliminary Approval Order and **FINDS**, **CONCLUDES**, and **ORDERS** as follows:

1.    All initial-capped terms contained herein shall have the same definitions as set forth in the Settlement Agreement, which is attached as Exhibit 1 to Declaration of Trenton R. Kashima in support of Plaintiff's Unopposed Motion for Preliminary Approval [ECF No. 40-5].

2.    The Court appoints Phoenix Settlement Administrators as the Settlement Administrator and preliminarily approves the allocated Settlement Administrator Payment. The Settlement Administrator will prepare final versions of the Revised Class Notice, submitted by Plaintiff on May 1, 2020, incorporating into it the relevant dates and deadlines set forth in this Order and the Settlement Agreement, and will carry out the notice procedures set forth in the Settlement Agreement.

3.    The Court concludes that the Revised Class Notice as well as the procedure set forth in the Settlement Agreement for providing notice to the Class Members, will provide the best notice practicable under the facts and circumstances of this case. There is no alternative method of notice that would be more practical or more likely to notify Class Members of the terms of the Settlement. The Revised Class Notice fairly, plainly, accurately, and reasonably informs Class Members of: (a) the nature of the Action, the definition of the Class Members, the identity of Class Counsel, and the essential terms of the Settlement Agreement, including the plan of allocation under the Class and FLSA portions of the Settlement; (b) Plaintiff's application for the Plaintiff's Service Award and Class Counsel's request for attorneys' fees and litigation costs; (c) how to participate in and receive proceeds under the Class and FLSA portions of the Settlement; (d) how to

object to or request exclusion from the Settlement; and (e) how to obtain additional information regarding the Action and the Settlement.  The Court thus finds that the notice requirements for class and collective actions are satisfied.

4.      Any Class Member who intends to be excluded from the Class Settlement must submit the Opt Out Form Attached to the Revised Class Notice, or a letter stating their intention to opt out of the Settlement, to the Settlement Administrator within 45 calendar days following the mailing of the Revised Class Notice, extended by 14 days for those Class Members whose Class Notice was remailed as provided below (the "Claims Period"). The Settlement Administrator will provide any exclusions to counsel for the Parties.  Class Counsel will lodge any exclusions with the Court within five (5) Court days of the expiration of the Claims Period.

5.      Any Class Member who intends to object to final approval of the Settlement or Class Counsel's motion for fees and costs must submit an objection to the Settlement Administrator within the Claims Period and in the form and manner set forth in the Settlement Agreement. The Settlement Administrator will provide any objections to counsel for the Parties.  Class Counsel will lodge any objections with the Court within five (5) Court days of the expiration of the Claims Period. If a Class Member opts out after filing an objection, then his/her objection will be moot. However, Class Members who file an objection may be heard at the Final Approval Hearing, either personally or through their counsel.

6.      Any Class Member who intends to opt in to the FLSA Subclass must submit valid and timely FLSA Opt-In Form or make a valid and timely request by visiting and completing the required form at www.libreFLSAsettlement.com before the expiration of the Claims Period. Upon expiration of the Claims Period, the Settlement Administrator will provide any FLSA Opt-In Claim Forms or electronic opt-in requests to counsel for the Parties.  Class Counsel will lodge any FLSA Opt-In Claim Forms or electronic opt-in requests with the Court within five (5) Court days of the expiration of the Claims Period.

7.    In the event that the Effective Date occurs: all Settlement Class Members will be deemed to have forever released and discharged the Released Claims set forth in the Settlement Agreement; and all Class Members who opt into the FLSA Subclass will be deemed to have forever released and discharged the FLSA claims as set forth in the Settlement Agreement.

8.    The Parties and Settlement Administrator are ordered to provide notice of the Settlement according to the terms of the Settlement Agreement and in conformity with this Order, including:

a)    No more than ten (10) calendar days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the Class Information for purposes of sending the Revised Class Notice to Class Members.

b)    No more than seven (7) calendar days or as soon as reasonably practical after receiving the Class Information from Defendant, the Settlement Administrator shall send the Revised Class Notice, Class Member Information Sheet, FLSA Out-In Form (if applicable), and Opt Out Form to Class Members via U.S. Mail.

c)    No more than seven (7) calendar days or as soon as reasonably practical after receiving the Class Information from Defendant, the Settlement Administrator establish a website, at www.libreFLSAsettlement.com, which will contain the Revised Class Notice, the pleadings, the Settlement Agreement, other papers related to the Settlement filed with the Court, and the required form for opting into the FLSA Subclass and opt out form for class members.

d)    The Revised Class Notice will inform Class Members that unless they file a request to be excluded from the Settlement within 45 days after the mailing of the Class Notice: they will become Settlement Class Members; they will receive Individual Settlement Payments under the Agreement; they will be

bound by the release of Settlement Class Members' Released Claims; and if they cash their Individual Settlement Payment check.

e)  The Revised Class Notice will inform qualifying Class Members of their right to opt in to the FLSA Subclass and receive a FLSA Sub-Class Settlement Share and the procedure for doing so.  The Revised Class Notice will further inform Class Members that if they opt in to the FLSA Subclass, and receive a FLSA Sub-Class Settlement Share, they will be bound by the release of FLSA claims contained within the Settlement Agreement.

f)  The Revised Class Notice will inform Class Members of their right to object to the Settlement and the procedure for doing so.

g)  The Revised Class Notice shall be accompanied by a statement as to the number of workweeks attributable to each Class Member, as well as an estimate on the amount expected under the Settlement, and the manner by which the Class Member can dispute the calculation of the number of weeks he/she worked during the Class Period.

h)  If any Class Notice mailed to any Class Member is returned, the Settlement Administrator shall make a good-faith attempt to obtain the most-current names and postal mail addresses for those individuals, including cross-checking the names and/or postal mail addresses it received from Defendant with other appropriate databases (e.g., the National Change of Address Database) and performing further reasonable searches for more-current names and/or postal mail addresses for those individuals.  All Class Members' names and postal mail addresses obtained through these sources shall be protected as confidential and not used for purposes other than the notice and administration of this Settlement.  The address determined by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Class Member.  The Settlement Administrator shall promptly re-mail

the Class Notice to any Class Member whose original notice was returned because of a wrong address.

i)   If any Class Notice is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator shall forward the postal mailing to that address.

j)   The Settlement Administrator shall maintain a log detailing the instances Class Notices are returned as undeliverable, re-mailed, and when applicable, returned again.  The re-mailing of the Class Notice will extend the deadline for opting in to the FLSA Subclass, objecting to the Settlement, or requesting exclusion from the Settlement by an additional fourteen (14) calendar days.

9.   Plaintiff has provided notice of the Settlement to the California Labor and Workforce Development Agency, satisfying the requirements of PAGA.

10.   All proceedings and all litigation of the Action, other than those pertaining to the administration of the Settlement, are stayed pending the Final Approval Hearing.

11.   The preliminary approval of the Settlement, certification of the Settlement Class and all claims associated with them, are undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated or disapproved in whole or in part by the Court, or any appellate court and/or other court of review.  In such an event, the Settlement Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including, but not limited to, an admission by any Party of liability or non-liability or of the certifiability of a litigation class or the appropriateness of maintaining a representative action.

12.   The Court will conduct a Final Approval Hearing on **August 7, 2020 at 1:30 p.m**. where it will make a determination on: (i) whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved by the Court; (ii) the amount of attorneys' fees and costs that should be awarded to Class Counsel; and (iii) the amount of the Incentive Award that the Plaintiff should receive. The Court reserves the right to adjust

the date of the Final Approval Hearing and related deadlines without further notice to the Class Members.

13.    Plaintiff's Motion for Final Approval of the Settlement, and Class Counsel's motion for an award of attorneys' fees and costs, will also be filed and heard on or before the final approval hearing, and the Parties and the Settlement Administrator will comply with the following schedule for the Settlement Administration and final approval process:

| Event | Date |
|---|---|
| Defendants to provide Class Member list to Settlement Administrator | Within ten days after the Motion for Preliminary Approval is granted |
| Settlement Administrator to mail Notice Packets | Within seven days after receiving the Class Members' Data or as soon as reasonably practical. |
| Class Counsel to file Motion for Attorney's fees, costs, and incentive awards | Fifteen court days before the deadline to file objections to Settlement. |
| Deadline for Class Members to opt-out, opt-in, and/or object to the Settlement Agreement | Forty-five days from the initial mailing of the Class Notice Packet by the Settlement Administrator.<br><br>An additional fourteen days for Class Members who failed to receive a Class Notice Packet, or who were subject to a re-mailing of the Class Notice Packet. |
| Plaintiff to file any objections, exclusions, and FLSA Opt ins | Five Days following the expiration of the Claims Period. |
| Parties to file Motion for Final Settlement Approval | Ten court days before the Final Approval Hearing |
| Settlement Administrator to file a declaration of due diligence | Ten court days prior to the Final Approval Hearing |
| Parties' response to any Class Member's objection | Five court days prior to the Final Approval Hearing |
| Final Approval Hearing | **August 7, 2020** |

14.    In the event the Settlement is not finally approved, or otherwise does not become effective in accordance with the terms of the Settlement Agreement, this Order shall be rendered null and void and shall be vacated, and the Parties shall revert to their respective

positions as of before entering into the Settlement Agreement. The Court's findings are for purposes of certifying a settlement class and to settle the matter and will not have any claim or issue preclusion or estoppel effect in any other action against Defendant, or in this action if the Settlement is not finally approved.

IT IS SO ORDERED.

Dated:  May 12, 2020

Hon. Gonzalo P. Curiel
United States District Judge

24